

RECEIVED
Dec 29, 2009
DEC 2 9 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PHILIP W. MCDOWELL,

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

ANITA ALVAREZ, in her official

capacity as the Cook County

State's Attorney; COUNTY OF COOK;

VILLAGE OF ALSIP, ILLINOIS,

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**09 C 8033**
**Judge Ronald A. Guzman**           )
**Magistrate Judge  Maria Valdez**

**CHECK ONE ONLY:**

   X       **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
            **U.S. Code** (state, county, or municipal defendants)

           **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
            **28 SECTION 1331 U.S. Code** (federal defendants)

           **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.**   **Plaintiff(s):**

A.   Name:   Philip W. McDowell

B.   List all aliases:   NONE

C.   Prisoner identification number:   B-46854

D.   Place of present confinement:   Danville Correctional Center

E.   Address:   3820 East Main Street, Danville, IL   61834

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.**   **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.   Defendant:   Anita Alvarez, in her official capacity,

Title:   Cook County State's Attorney

Place of Employment:   Cook County, IL

B.   Defendant:   County of Cook

Title:   County within State of Illinois

Place of Employment:   Cook County, Illinois

C.   Defendant:   Village of Alsip

Title:   Municipality within Cook County, Illinois

Place of Employment:   Alsip, Illinois

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number:   McDowell v. County of Cook, et al.   93 CV 1525

B.   Approximate date of filing lawsuit:  March 12, 1993

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases:   Philip W. McDowell

D.   List all defendants:  County of Cook; Michael Sheehan; J.W. Fairman; Mr. Russell; Benny Caldwell; Mr. Biglow; Mr. Acavedo; Mr. Zerbes; John Doe 1, #5607; John Doe 2, #5649; John Doe 3, #3121

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county):  Northern District of Illinois, Eastern Division

F.   Name of judge to whom case was assigned: Magistrate Judge Rebecca R. Pallmeyer, District Judge George W. Lindberg

G.   Basic claim made:  Physical abuse/beating by Sheriff's deputies violated pretrial detainee civil rights and induced false guilty plea, same date.

H.   Disposition of this case (for example:  Was the case dismissed?  Was it appealed?  Is it still pending?):  Settled out of Court; Plaintiff's oral motion to dismiss with prejudice granted August 05, 1994.

I.   Approximate date of disposition:  August 09, 1994

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

IV.   **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

**FACTS**

1.   Following remand for post-conviction evidentiary hearing on claim of actual innocence (Exhibit A) guilty plea defendant moved for DNA testing and fingerprint comparisons  relative to physical evidence collected at 1989 murder scene by Alsip Police and discovered in 2007 intact in the custody of Dorothy Brown, Cook County Circuit Court Clerk. (Exhibit B).

2.   Holding that People v. Oconnell, 227 Ill. 2d 31, 879 N.E. 2d 315 (2007) precludes relief (defendants whom pled guilty may not avail themselves of DNA testing pursuant to 725 ILCS 5/116-3 et seq.) the Cook County Circuit Court on February 27, 2009 denied defendant's request for testing of evidence. (Exhibit C).

*         *         **CLAIM**         *         *

3.   Since guilty plea defendant already has made a "substantial showing" he is actually innocent despite pleading guilty, thus mandating third stage post-conviction hearing, depriving particular defendant of probative DNA and finger-print evidence violates defendant's substantive and procedural due process rights protected by 14th Amendment of United States Constitution.

4.   Where guilty plea defendant is not afforded the same opportunity to present evidence of actual innocence as other post-conviction petitioners awarded evid-entiary hearings on actual innocence, Equal Protection of the Illinois Post-Con-viction Hearing Act, 725 ILCS 5/122-1 et seq. (West 2002) has been denied.

Revised 9/2007

Legal argument omitted per instructions set forth on page 4.

Revised 9/2007

**V.     Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Hold that Plaintiff's liberty interest in demonstrating innocence, bolstered

by the grant of an evidentiary hearing specifically to inquire anew into the

question of Plaintiff's purported guilt, compel the conclusion Plaintiff is

entitled to access to the evidence for DNA testing and fingerprint comparison.

Such access includes DNA and Fingerprint data bases maintained by State and

local law enforcement officials.

VI.     The plaintiff demands that the case be tried by a jury.    [x] YES    [ ] NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 22nd day of December, 2009

_____
(Signature of plaintiff or plaintiffs)

Philip W. McDowell
(Print name)

B-46854
(I.D. Number)

3820 East Main Street, Danville, IL 61834

_____

_____
(Address)

Revised 9/2007

## APPENDIX OF EXHIBITS

EXHIBIT A                          Order, Illinois S. Ct.

EXHIBIT B                          Amended Motion for Discovery

EXHIBIT C                          Record of Proceedings 2/27/09
                                   State's Motion to Dismiss

# EXHIBIT

SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the thirteenth day of May, 2002.

Present: Moses W. Harrison II, Chief Justice
Justice Charles E. Freeman       Justice Mary Ann G. McMorrow
Justice Thomas R. Fitzgerald     Justice Robert R. Thomas
Justice Thomas L. Kilbride       Justice Rita B. Garman

On the tenth day of July, 2002, the Supreme Court entered the following judgment:

No. 94097

Philip W. McDowell,                          Petition for Leave
                                             to Appeal from
        Petitioner                           Appellate Court
                                             Fourth District
        v.                                   4-01-0602
                                             00MR35
William E. Boyd, Warden, Western Illinois
Correctional Center,

        Respondent

IT IS HEREBY ORDERED that the petition for leave to appeal is DENIED.

In the exercise of this Court's supervisory authority, the Appellate Court Fourth District, is directed to vacate its judgment in case No. 4-01-0602. The Circuit Court of Brown County is directed to vacate its judgment in case No. 00MR35. It is further ordered that this cause is transferred to the Circuit Court of Cook County. The Circuit Court of Cook County is directed to treat plaintiff's petition for writ of habeas corpus as a post-conviction petition and to conduct an evidentiary hearing on plaintiff's claim of actual innocence pursuant to section 122-6 of the Post-Conviction Hearing Act. (725 ILCS 5/122.6).

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

                    IN WITNESS WHEREOF, I have hereunto
                    subscribed my name and affixed the Seal
                    of said Court, this first day
                    of August, 2002.

                    *Juleann Hornyak*

                                        Clerk,
            Supreme Court of the State of Illinois

                                        EXHIBIT   A

# EXHIBIT

"Denied
2/27/09

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CRIMINAL DIVISION—FIFTH MUNICIPAL DISTRICT

PHILIP W. MCDOWELL,                    )
                                       )
        Petitioner-Defendant,          )        Case No. 90 C5 50049
                                       )
                                       )        P.C. No. 8131
-vs-                                   )                        FILED
                                       )                        2/22/08
                                       )
THE PEOPLE OF THE STATE OF ILLINOIS,   )        The Honorable
                                       )        COLLEEN MCSWEENEY-MOORE,
        Respondent-Plaintiff.          )        Judge Presiding.


## AMENDED MOTION FOR POST-CONVICTION DISCOVERY


    Now comes Petitioner, Philip W. McDowell, and pursuant to 725 ILCS 5/122-
6 respectfully seeks leave to amend his January 04, 2008 motion for post-
conviction discovery to request the Court order certain fingerprint compar-
isons be conducted and DNA testing be performed on articles of evidence,
and the results of both equally compared to Petitioner and State's witness
Glenn D. Serratt. In support of his motion, Petitioner states:


    1.   On June 01, 2006 Petitioner submitted to then presiding Judge Kerry
L. Kennedy a pro-se motion for fingerprint and DNA testing pursuant to 725 ILCS
5/116-3 (West 2006). However, because several months passed before any evi-
dence could be located, whether the motion should be granted was not decided
by Judge Kennedy before Petitioner's case was transferred to this Court Sept-
ember 08, 2006.

    2.   On October 11, 2006, this Court was made aware of and briefly rev-
iewed Petitioner's DNA motion. Understandably though no decision was reached
regarding its merit at that time.

3.   On April 10, 2007, former counsel for Petitioner reportedly was granted limited supervised access to a box appearing to contain all of the bilogical evidence and latent fingerprints police found in Petitioner's case at the crime scene, inside and on items recovered from a 1989 Buick Regal.

4.   Despite having finally located the physical evidence and confirming its integrity and availability to produce material, reliable DNA test and fingerprint comparison results, the Supreme Court's recent decision in People v. Oconnell, 227 Ill. 2d 31 (2007) requires this Court deny Petitioner's setion 116-3 motion where the Court held that "as a matter of law, defendants who plead guilty may not avail themselves of section 116-3." Oconnell (WL Slip Opinion 4200952, at 5; see attached Exhibit A). This is simply because Petitioner's conviction dereives from his August 17, 1992 blind guilty plea.

5.   Despite being a class member of a particular group of defendants ecluded by omission from using section 116-3 "as a means to request DNA test-ing" (Exhibit A at 5), nothing in Oconnell suggests guilty plea defendants are to be similarly denied scientific testing requested pursuant to section 122-6 of the Post-Conviction Hearing Act. 725 ILCS 5/122-6 (West 2008). As with other methods of post-conviction discovery, the DNA testing and finger-print comparisions sought should be granted only when, after a hearing, "good cause" is shown by Petitioner. People v. Williams, 209 Ill. 2d 227, 282 Ill. Dec. 824, 807 N.E. 2d 448 (Ill. 2004).

6.   That "good cause" exists to order Glenn Serratt and Petitioner's genetic profiles both be compared to that now available from evidence left at the crime scene and in the 1989 Buick Regal is perhaps best shown at a

hearing where the proponents of the attached affidavits may testify that since Petitioner's conviction, State's witness Glenn D. Serratt twice has confessed to actually committing the October 25, 1989 murder of Joseph Freeman Pankey, (Exhibits B and C) during which incident Serratt admits he "cut himself". (Exhibit C at 7).

7.   In addition to the above, Petitioner in good faith posits that at a hearing on his discovery requests, Petitioner amply will further demonstrate the "facts" so heavily relied upon by the State at the plea disposition and sentencing were derived exclusively from Glenn D. Serratt. But, the purported facts were neither investigated or corroborated by the State or Alsip Police.

8.   Finally, Petitioner maintains that DNA testing and fingerprint comparisons likely would: (a) raise significant doubt as to the guilt of Petitioner; (b) objectively provide the factual basis for a defense worthy of consideration; or (c) show that the ends of justice would be better served by submitting Petitioner's case to a jury. Any one of the foregoing which would engender post-conviction relief. People v. Morreale, 412 Ill. 528, 107 N.E. 2d 721. (Ill. 1952).

WHEREFORE, Petitioner prays the Court grant his request for DNA testing and fingerprint comparisons.

Respectfully submitted,

Philip W. McDowell   Pro-Se
B46854
3820 E. Main Street
Danville, IL 61834

--- N.E.2d ----, 227 Ill.2d 31, 2007 WL 4200952 (Ill.)

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Supreme Court of Illinois.
The PEOPLE of the State of Illinois, Appellant,
v.
John O'CONNELL, Appellee.
No. 102707.
Nov. 29, 2007.

**Background:** Defendant, who pled guilty to murder several years earlier, moved for evidentiary DNA testing. The Circuit Court, Cook County, Stanley Sacks, J., denied motion sua sponte and without giving defendant an opportunity to argue in support of his motion. Defendant appealed. The Appellate Court, 365 Ill.App.3d 872, 850 N.E.2d 278, 302 Ill.Dec. 841, reversed and remanded. Leave to appeal was allowed.

**Holding:** The Supreme Court, Kilbride, J., held that as a matter of first impression, the postconviction forensic testing statute applies only if a defendant has been convicted following a trial contesting identity, and thus, defendants who plead guilty may not avail themselves of the statute.

Appellate Court judgment vacated; Circuit Court judgment reversed.

[1] KeyCite Notes

   110 Criminal Law
      110XXIV Review
         110XXIV(L) Scope of Review in General
            110k1139 k. Additional Proofs and Trial De Novo. Most Cited Cases

Supreme Court reviews de novo the trial court's denial of a postconviction motion for DNA testing. S.H.A. 725 ILCS 5/116-3.

[2] KeyCite Notes

   361 Statutes
      361VI Construction and Operation
         361VI(A) General Rules of Construction
            361k180 Intention of Legislature
               361k181 In General
                  361k181(1) k. In General. Most Cited Cases

The primary rule of statutory construction is to determine and give effect to the intent of the legislature.

[3] KeyCite Notes

EXHIBIT    A

361 Statutes
    361VI Construction and Operation
       361VI(A) General Rules of Construction
         361k187 Meaning of Language
           361k188 k. In General. Most Cited Cases

The statutory language itself is the best indicator of legislative intent.

[4] KeyCite Notes

361 Statutes
    361VI Construction and Operation
       361VI(A) General Rules of Construction
         361k187 Meaning of Language
           361k195 k. Express Mention and Implied Exclusion. Most Cited Cases

Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.

[5] KeyCite Notes

110 Criminal Law
    110XXX Post-Conviction Relief
       110XXX(C) Proceedings
         110XXX(C)1 In General
           110k1590 k. Discovery and Disclosure. Most Cited Cases

Postconviction forensic testing statute applies only if a defendant has been convicted following a trial contesting identity, and thus, defendants who plead guilty may not avail themselves of the statute. S.H.A. 725 ILCS 5/116-3(a), (b)(1).

[6] KeyCite Notes

110 Criminal Law
    110XXX Post-Conviction Relief
       110XXX(C) Proceedings
         110XXX(C)3 Hearing and Determination
         110k1651 Necessity for Hearing
           110k1655 Particular Issues
             110k1655(1) k. In General. Most Cited Cases

Sua sponte denial of defendant's postconviction motion for DNA testing was warranted, where defendant's motion was insufficient, as a matter of law, because defendant pled guilty rather than proceeding to trial, so that defendant was not entitled to relief under the postconviction forensic testing statute. S.H.A. 725 ILCS 5/116-3(a), (b)(1).

[7] KeyCite Notes

110 Criminal Law
    110XX Trial

110XX(A) Preliminary Proceedings
  110k632 Dockets and Pretrial Procedure
    110k632(1) k. In General. Most Cited Cases

A trial court may, on its own motion, dispose of a matter sua sponte when it is clear that the requesting party is not entitled to relief as a matter of law.

## OPINION

Justice KILBRIDE delivered the judgment of the court, with opinion.
  *1 In attempting to raise an actual-innocence claim, defendant, John O'Connell, filed a *pro se* motion for DNA testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-3 (West 2002)). The circuit court of Cook County denied defendant's motion. The appellate court reversed the trial court's order denying defendant's motion for DNA testing and remanded the cause for further proceedings. 365 Ill.App.3d 872, 302 Ill.Dec. 841, 850 N.E.2d 278. This court allowed the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill.2d R. 315). We now vacate the judgment of the appellate court and affirm the trial court's denial of defendant's *pro se* motion to allow DNA testing.

## BACKGROUND

Defendant, John O'Connell, pled guilty to three counts of first degree murder, two counts of aggravated criminal sexual assault, and one count of armed robbery. Prior to accepting defendant's guilty plea, the trial court admonished defendant that he had the right to a jury trial and to present a defense. Defendant told the trial judge that he understood his rights but wished to waive them and plead guilty.

The stipulated factual basis informed the court that at noon on September 7, 1990, defendant entered a flower shop where the 64-year-old victim worked. Defendant sexually assaulted the victim, beat her, stabbed her in the stomach, stole money from the cash register, and fled. Defendant was later arrested near the scene.

At the time he was arrested, defendant had blood on his underwear, shirt, and hands, and money from the flower shop in his pants' pocket. A blood-covered knife was found in defendant's van. Later that same day, defendant made an inculpatory statement. The victim suffered severe injuries and, six days later, died of complications.

The trial court admonished defendant of the possible sentences, including the potential death sentence. Defendant told the court he still wanted to plead guilty. The trial court accepted defendant's guilty plea and sentenced defendant to concurrent terms of natural life imprisonment for three counts of murder, two extended-term sentences of 60 years for each count of aggravated criminal sexual assault, and 30 years' imprisonment for armed robbery.

Defendant subsequently filed a motion to reconsider the sentence but told the trial court he did not want to withdraw his guilty plea. The trial court did not reduce defendant's sentence, and defendant appealed. The appellate court affirmed. *People v. O'Connell,* No. 1-93-0200 (1995) (unpublished order under Supreme Court Rule 23).

Defendant later filed a *pro se* postconviction petition alleging his extended-term sentences violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The trial court dismissed the petition. The appellate court affirmed the circuit court's summary dismissal of defendant's postconviction petition, but ordered the trial court to correct the mittimus to reflect a single conviction for first degree murder. *People v. O'Connell,* No. 1-01-0421 (2002) (unpublished order under Supreme Court Rule 23).

*2 After his direct appeal and postconviction proceedings, defendant filed the instant *pro se* motion to allow DNA testing pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2002)). Section 116-3 allows a defendant to make a motion for fingerprint or forensic testing "not available at the time of trial" when "identity was the issue in the trial" resulting in defendant's conviction. 725 ILCS 5/116-3(a), (b) (West 2002).

The trial court denied defendant's motion for DNA testing. The trial court reasoned that defendant failed to establish a *prima facie* case for DNA testing because "identity was not at issue at trial" when defendant pled guilty. The trial court subsequently denied defendant's motion to reconsider, and defendant appealed.

The appellate court reversed the trial court's denial of defendant's motion for DNA testing and remanded for further proceedings. 365 Ill.App.3d 872, 302 Ill.Dec. 841, 850 N.E.2d 278. The appellate court held that section 116-3 does not allow for summary dismissal of motions for DNA testing. The appellate court also held that any error was not harmless because counsel may have been able to argue persuasively that identity was at issue at trial, despite defendant's guilty plea. The State timely appealed pursuant to Supreme Court Rule 315 (210 Ill.2d R. 315). We allowed the State's petition for leave to appeal.

ANALYSIS

[1]   The State appeals from the judgment of the appellate court reversing the trial court's denial of defendant's motion for DNA testing pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2002)). We review *de novo* the trial court's denial of a motion for DNA testing under section 116-3. *People v. Brooks*, 221 Ill.2d 381, 393, 303 Ill.Dec. 161, 851 N.E.2d 59 (2006); *People v. Shum*, 207 Ill.2d 47, 65, 278 Ill.Dec. 14, 797 N.E.2d 609 (2003).

This case presents an issue of first impression before this court. We must determine whether, as a matter of law, section 116-3 allows a defendant who pleads guilty to make a motion for DNA testing. Our resolution of this case is a straightforward statutory construction of the threshold requirements of section 116-3. We begin with a review of section 116-3.

In 1998, the legislature enacted section 116-3, outlining the process defendants must follow to obtain fingerprint or forensic DNA testing not available at trial when actual innocence was at issue during trial. 725 ILCS 5/116-3 (West 2000). Section 116-3 provides, in relevant part:

"Motion for fingerprint or forensic testing not available at trial regarding actual innocence.

(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. * * *

(b) The defendant must present a prima facie case that:

*3 (1) identity was the issue in the trial which resulted in his or her conviction; and

(2) The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." 725 ILCS 5/116-3 (West 2002).

This court has previously considered section 116-3 in the context of a defendant's burden to obtain forensic testing. In *People v. Savory*, 197 Ill.2d 203, 258 Ill.Dec. 530, 756 N.E.2d 804 (2001), we examined whether evidence a defendant sought to test pursuant to section 116-3 was materially

relevant to his claim of actual innocence. In *Shum*, 207 Ill.2d 47, 278 Ill.Dec. 14, 797 N.E.2d 609, we considered whether a defendant made a *prima facie* case under section 116-3 for DNA testing to establish actual innocence. Most recently, in *Brooks*, 221 Ill.2d 381, 303 Ill.Dec. 161, 851 N.E.2d 59, we considered whether a defendant was entitled to polymerase chain reaction (PCR) DNA testing when the testing was available at the time of the defendant's trial. Those cases all involved an analysis of the statutory requirements for section 116-3 testing following a trial and conviction. Analysis under that line of cases is irrelevant to a case involving a guilty plea.

Before any analysis of the statutory requirements to allow DNA testing, the initial issue is the applicability of the statute. The parties and the lower courts did not examine the threshold requirements. We now construe the terms of section 116-3 to determine whether defendants who enter guilty pleas may make a motion for DNA testing.

[2]  [3]  "The primary rule of statutory construction is to determine and give effect to the intent of the legislature." *Burke v. 12 Rothchild's Liquor Mart, Inc.*, 148 Ill.2d 429, 441, 170 Ill.Dec. 633, 593 N.E.2d 522 (1992). The statutory language itself is the best indicator of legislative intent. *Burke*, 148 Ill.2d at 441-42, 170 Ill.Dec. 633, 593 N.E.2d 522.

The plain language of section 116-3 states that the motion is intended for performance of "fingerprint or forensic testing *not available at trial* regarding actual innocence." (Emphasis added.) 725 ILCS 5/116-3 (West 2002). This court has recognized that the plain language of subsection (a) of section 116-3 requires a defendant show (i) the evidence in question was not subject to the requested test at the *time of trial;* and (ii) the evidence was not subject to testing because the requested test was unavailable *at the time of defendant's trial. Brooks*, 221 Ill.2d at 393, 303 Ill.Dec. 161, 851 N.E.2d 59. The plain language of subsection (b) further requires a defendant present a *prima facie* case of identity at issue *at his trial* and the evidence to be tested has been under a secure chain of custody. 725 ILCS 5/116-3(b) (West 2002).

[4]  A section 116-3 motion for forensic testing is a legislatively created right. " 'Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.' " *Mattis v. State Universities Retirement System*, 212 Ill.2d 58, 78, 287 Ill.Dec. 541, 816 N.E.2d 303 (2004), quoting *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill.2d 141, 151-52, 227 Ill.Dec. 753, 688 N.E.2d 90 (1997). See also *Burke*, 148 Ill.2d at 442, 170 Ill.Dec. 633, 593 N.E.2d 522 ("Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation"). The plain and unambiguous language of section 116-3 permits a motion for DNA testing only when a defendant has been *convicted following a trial* contesting identity.

*4 [5]  Accordingly, as a matter of law, defendants who plead guilty may not avail themselves of section 116-3. Those defendants are a separate group who have not contested identity at trial. Accordingly, based on our statutory construction, we conclude the appellate court erroneously determined section 116-3 permits a defendant who pleads guilty to argue that identity was at issue, despite his guilty plea. 365 Ill.App.3d at 877-78, 302 Ill.Dec. 841, 850 N.E.2d 278.

Nonetheless, defendant argues that the purpose of section 116-3, to exonerate innocent defendants, is best served by allowing defendants who plead guilty to seek DNA testing. Defendant suggests an individual may plead guilty to a crime, despite his or her innocence, to obtain lesser charges or a reduced sentence. We are, however, constrained by the plain language of the statute. We reiterate, a defendant who pleads guilty may not use section 116-3 as a means to request DNA testing.

[6]  [7]  On a final point, the appellate court also concluded that section 116-3 does not

expressly provide for summary dismissal of motions for DNA testing and that a defendant has a right to notice and an opportunity to respond before ruling on the motion. The trial court did not, however, "summarily" deny or dismiss defendant's motion. See *People v. Vincent*, 226 Ill.2d 1, 11, 312 Ill.Dec. 617, 871 N.E.2d 17 (2007) (the term "summary dismissal" is unique to the Post-Conviction Hearing Act (725 ILCS 5/122-2.1 (West 2004))). Rather, the trial court *sua sponte* denied defendant's motion for DNA testing after determining that defendant's motion did not provide a legal basis for the request. "[A] trial court may, on its own motion, dispose of a matter [ *sua sponte* ] when it is clear * * * that the requesting party is not entitled to relief as a matter of law." *Vincent*, 226 Ill.2d at 12, 312 Ill.Dec. 617, 871 N.E.2d 17. We hold that the trial court did not err in *sua sponte* denying defendant's motion for section 116-3 testing when defendant's motion was insufficient, as a matter of law, because defendant pled guilty rather than proceeding to trial.

## CONCLUSION

We determine that the trial court correctly denied defendant's request for DNA testing as a matter of law. We further conclude the appellate court overlooked the plain and unambiguous language of section 116-3 in reversing the trial court's denial of defendant's motion for DNA testing. We therefore vacate the judgment of the appellate court and affirm the trial court's denial of defendant's section 116-3 motion for DNA testing.

*Appellate court judgment vacated; circuit court judgment affirmed.*

Chief Justice THOMAS and Justices FREEMAN, FITZGERALD, GARMAN, KARMEIER, and BURKE concurred in the judgment and opinion.

Ill.,2007.
People v. O'Connell
--- N.E.2d ----, 227 Ill.2d 31, 2007 WL 4200952 (Ill.)

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

*1777*

*To RSK*
*10/14/05*

STATE OF ILLINOIS  )
                   )  ss:
COUNTY OF WILL     )

## AFFIDAVIT

    I, SALVADOR ORTIZ, do hereby state upon oath and penalty of perjury that the following statements are true and correct; based upon personal knowledge and given freely and voluntarily without threat, promise nor payment:

    1) I am a citizen of the State of Illinois, having lived in Cook County for 30 years. I am currently imprisoned at the Joliet Correctional Center in Joliet, Illinois, under inmate idententification number B-56650.

    2) On March 3, 1994 I was convicted of murder and sentenced to 47 years in the Illinois Department of Corrections.

    3) On May 1, 1996 I was transferred from Pontiac Correctional Center, in Pontiac, Illinois to the Danville Correctional Center, in Danville, Illinois. I was housed in the R-1-D living unit.

    4) During my incarceration at Danville Correctional Center I attended school and worked at the Education Building as the clerk. In my spare time, my immediate supervisor, Mr. Roger Corsaro allowed me to go down to the gym where I often lifted weights, along with several other inmates of the prison.

    5) Since I spent a good deal of my time at Danville C.C. weightlifting and working out, I eventually became acquainted with, and came to know, other inmates at Danville C.C. who regularly used the gym and also lifted weights.

    6) Sometimes, and almost always when working out with heavy weights, I would work out with another inmate or call someone who was also in the gym over to spot for me. From time to time I worked out with an inmate who became known to me as Glenn Serratt, his nick-name was "Hulk".

    7) On or about July 16, 1998, I was in the gym at Danville C.C. working out with Glenn Serratt. He was spotting for me, and I for him. We worked out for approximately 30 - 45 minutes during which time Glenn and I spoke about a variety of subjects. Glenn told me he was from the South side of Chicago; had been in trouble for most of his life; had drug problems in the past and that he was now in prison for stealing a car. Glenn told me he had been in prison a few times before and in response to my comment that Glenn was lucky he had not been sentenced as a career criminal, Glenn told me he knew the system too well and knew how to deal for low sentences whenever he got caught. Glenn told me that one time, back in 1989 or 1990, he

*[signature]*
Initials of Affiant

*1 of 2*

had come very close to getting a lot of time but instead, he was able to talk a "stupid" State's Attorney into dropping the charges and let him out of jail.

8) Glenn told me during this conversation that a friend of his named Phil had got arrested and a State's Attorney named Sherman had came to Glenn and told him that if Glenn would sign a statement against Phil, then Glenn's charges would be dropped. Glenn said that any other time he would never sign any statement against anybody, especially one of his friends, but he was'nt worried about Phil getting convicted because he was in jail when the crime happened so he would beat the case anyway. Glenn said he was surprised that his friend was even arrested in the first place. Glenn said he signed the statement and the charges were dropped and he was let out of jail. When I asked him if his friend had beat the case, Glenn said that he must have because the State's Attorney never came back to him about it.

Affiant further sayeth not.

_Salvador Ortiz_
Affiant

Subscribed and sworn to before me
on this 12 day of May , 1999.

_____
Notary Public

```
"OFFICIAL SEAL"
JULIE A. TERLEP
Notary Public, State of Illinois
My Commission Expires 02/19/01
```

FILE MEMORANDUM

FROM:      Victoria Holland

DATE:      April 22, 2006

RE:        Visit with Inmate Salvador Ortiz

On April 22, 2006, three clinic students (Victoria Holland, Matthew McQuiston, and Morgan Trinkaus) visited with Salvador Ortiz in the Dixon Correctional Center. In May of 1999, Ortiz signed an affidavit stating that Glenn Serratt told him that Serratt admitted giving a State's Attorney false information implicating Phillip McDowell in the murder of Joe Freeman Panky in exchange for favorable treatment. Our purpose in visiting Ortiz was to verify that Ortiz had in fact made the statement and to determine to the extent possible whether Ortiz's story was credible. Prior to visiting Ortiz, we had been in touch with him to obtain his permission for a visit to discuss his statement. Through this earlier communication, we made Ortiz aware that we were seeking post conviction relief for Phillip McDowell.

At the beginning of the meeting, we informed Ortiz once again that we were working on behalf of Phillip McDowell, that we were not there to represent Ortiz in any capacity, and that our conversations with him were not protected by any attorney client privilege. Ortiz informed us that when he received our letter requesting the visit, that he was initially confused because he only knew Serratt by his nickname "the Hulk". He said he later put it together and admitted that it had been several years since he had given the statement and that his mother and brother, both ex-cons, had died since then. He mentioned that the death of his family members had weighed heavily on him as his mother died tragically while in police custody and his brother died after falling into a depression following his mother's death. Ortiz said it would help jog his memory if he could read his statement, which we showed him.

Ortiz verified his signature on the statement and he began to recall details as the meeting progressed. Ortiz indicated that he remembered typing the statement using his own words and having the statement notarized. Ortiz recalled that he met Phillip while they were both serving time in Pontiac. He recalled that someone had suggested he speak with "Cartoon" (Phillip's nickname) to get legal advice about his case. Ortiz told us that Phillip was in some form of protective custody and that he never saw Phillip's face. Ortiz said he only spoke with Phillip through the cell door and that he had to slide the papers he wanted Phillip to review under the door.

Ortiz indicated that Phillip told him about how Phillip ended up in prison and at some point Ortiz was able to make a connection between what Phillip was telling him and what "the Hulk" had previously told him. Ortiz said he realized that the friend that Serratt referred to was Phillip and that Phillip was now serving time for the murder that Serratt had spoken about with Ortiz. Ortiz said he told Phillip that Serratt admitted to Ortiz that Serratt had pinned the murder on Phillip believing that Phillip would get off once it was determined that Phillip was in jail at the time the murder was committed.

Ortiz said once he realized that Phillip was serving time for a murder that Serratt implied he committed, Ortiz asked Phillip if there was anything Ortiz could do to help. Ortiz said that Phillip later told him that he could write a statement if he wanted. (As an aside, Ortiz mentioned his attempt to obtain witness affidavits in his own case had resulted in the judge determining that Ortiz was involved in witness tampering.) Ortiz said that after he prepared the affidavit that he mailed it to McDowell (apparently the two men were in different facilities at the time).

Ortiz told us that he got the impression that Serratt actually committed the murder although Serratt never came out and specifically admitted doing so. Ortiz also told us that he believed Serratt was questioned in relation to the murder because Serratt said he gave the false statement at a time when he was facing "serious time". Ortiz did not believe that Serratt would consider "serious time" as the time that would flow from a non-violent crime like auto theft (Serratt's signature crime).

As Ortiz read over his statement, he began to recall more details about meeting Serratt. He recalled the fact that Serratt's hair was pulled back in a ponytail. When we asked Ortiz if the name Charles Fehill, another witness who provided a statement implicating Serratt, meant anything to him, he said the name sounded familiar but that he could not recall ever knowing anyone with that name. Ortiz wanted to us to let him keep a copy of his statement, but the guard would not allow us to do so. We told Ortiz that we would mail him a copy.

Ortiz said he would be willing to testify on Phillip's behalf with one condition: that we provide the judge with the subpoena five (5) days in advance so that Ortiz would not be housed in the "dungeon" in Stateville while awaiting his court appearance. Ortiz expressed the concern that he would not be able to shave and properly prepare himself if he was held in the Stateville "dungeon".

Ortiz also spoke about his own case. Ortiz indicated that Mark Oates from Baker & MacKenzie is representing him and that Oates was recently able to get Ortiz an evidentiary hearing. Ortiz also indicated that a lawsuit stemming from his mother's death was filed by the law firm of Loevy & Loevy.

Ortiz seemed credible. He has a very easy-going manner and he is very well spoken. He spoke of having committed other crimes like "stabbings" but said he never committed a murder. He appeared earnest and was generally a likable person. Ortiz asked us to tell Phillip that he was sorry that he did not initially remember him. He was interested in how things were proceeding with Phillip's appeal. He wanted us to inform Phillip about how his own efforts in seeking an appeal were proceeding.

Our action items from this meeting are as follows:

1) Send Ortiz a copy of his statement
2) Verify whether Ortiz and Fehill were ever housed together
3) Update Phillip on the meeting
4) Verify the charges Serratt was facing when he provided his statement

13/10/06

**Chicago-Kent**
**College of Law**
ILLINOIS INSTITUTE OF TECHNOLOGY

**Attorneys**
Gary S. Laser, Director
Matthew I. Bernstein
Gerald Brown
Daniel T. Coyne
Jonathan P. Decatorsmith
Ira C. Feldman
Richard J. Gonzalez
Vivien C. Gross
Pamela A. Kentra
Richard S. Kling
Edward Kraus
Laurie E. Leader

**Field Supervisor**
H. Brennan Holmes

**Staff Attorneys**
Kimberly Brumirski
Susana L. Ortiz

**Of Counsel**
Lori Andrews

www.kentlaw.edu

**Law Offices**
565 West Adams Street
Suite 600
Chicago, Illinois 60661

312.906.5050
312.906.5299 Fax
lawoffices@kentlaw.edu

## VISIT APPROVAL FORM

I, Salvador Ortiz, approve of a visit by representatives of the Law Offices of the Chicago-Kent College of Law. I agree that any of the following individuals have my permission to visit me at the Dixon Correctional Facility:

Richard Kling, Esq.
Chris Cieslak
✓Victoria Holland
Allison Kotarba
✓Michael Schwartz
✓Morgan Trinkhaus
Rachel Zahorsky

I agree to add the above listed individuals to my visitor's list.

*Salvador Ortiz*          *March 10, 2006*
Salvador Ortiz                    Date

NOTE: PLEASE CONTACT ME BY PHONE HERE FIRST. MR. CURT EUBANKS IS THE LEGAL COUNSELOR HERE. ASK FOR HIM. ALSO, I CANNOT PUT ALL THESE NAMES ON MY LIST. I'll PUT 3 ON, BUT NOT ALL 7 OF YOU.

B-5

SALVADOR ORTIZ · B56650
2600 N. BRINTON AVE.
DIXON, IL 61021

APR 15 2009

LEGAL
MAIL.

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

This Correspondence is From
An Inmate of The Illinois
Dept Of Corrections

**BUSINESS REPLY MAIL**
FIRST CLASS     PERMIT NO. 35055     CHICAGO, ILLINOIS

Postage will be paid by addressee

ATTN. VICTORIA NOLAND, LEGAL INTERN

℅ **Chicago–Kent College of Law**
**Illinois Institute of Technology**
**565 W. Adams St.**
**Chicago, IL 60661-3691**

B-6

2004

TO RSK
10/14/05

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIFTH MUNICIPAL DISTRICT-CRIMINAL DIVISION

STATE OF ILLINOIS     )
                      )     SS:     *     In Re: No. 90-C5-50049
COUNTY OF VERMILION.  )

## A F F I D A V I T

I, **Charles Fehill**, having first been duly sworn upon oath, hereby depose and state under penalty of perjury that the information herein stated is both true and correct and accurately reflects the nature and substance of certain and specific conversations between myself and **Glenn Serratt** during the course of my placement at the Illinois Department of Corrections Adult Transition Center located at 607-613 Main St. Peoria, Illinois 61629. I further depose that if called to testify by any party my testimony would consist of those facts outlined below. I have read this document, made any neccessary changes as indicated by my initials and fully declare this statement is given freely, without threat or promise.

1.  I am 33 years of age and have been a lifetime resident of the State of Illinois.

2.  On March 24, 2000, I was convicted in the Circuit Court of Will County of the offense of forgery and subsequently sentenced to eight (8) years in prison. I have prior convictions involving possession of a stolen motor vehicle, forgery and petty theft(s).



**EXHIBIT     C**

3.  As a result of my March 24, 2000 conviction and sentence I was incarcerated within the Illinois Department of Corrections which susequently determined that I was eligible for placement as a "permanent-party" resident at the Adult Transition Center (ATC) in Peoria, Illinois.

4.  In January, 2002 I was transferred to the ATC where I remained for approximately eleven (11) months until I was terminated from the program for violating rules regarding possession of money.

5.  Upon my arrival to the ATC I was assigned to a room in which there were ten (10) other similarly situtated inmates of the Illinois Department of Corrections. I was then assigned to work within the ATC maintenance pool. Also assigned to this work detail was **Glenn Serratt**, whom I came to know and preferred to be called by the nick-name "Hulk" (due to his physique).

6.  During my time at the ATC, **Glenn Serratt** and I became very good friends. We worked together almost every day at the ATC and also off campus at a Peoria restaurant called "Some Other Planet" (aka SOP's). The restaurant was owned by Rich Miller (309) 636-8736 and managed by Brian McFarland.

7.  **Glenn Serratt** and I spent time together at the ATC as well as on the street in Peoria. Street time would be achieved simply by manipulation of "pass-time" and furloughs. Through

**Glenn Serratt** I came to know Rhonda Serratt, whom **Glenn Serratt** claimed was his wife. Rhonda Serratt lived in Chicago and would frequently visit **Glenn Serratt** at the ATC.

8.  During our time together at the ATC and on pass or furlough time from the ATC, **Glenn Serratt** and I talked about our past criminal history. As a result of several conversations, and primarily in response to my statement to **Glenn Serratt** that I had once been acquitted of murder, I learned from Glenn Serratt the facts and details of a murder **Glenn Serratt** claimed to have committed in 1989. The following is my cumalative recollection of the facts **Glenn Serratt** related to me and is not intended to represent a verbatim summary:

**Glenn Serratt** told me that in 1989 he had just got out of prison and was on parole when he killed a man on the South side of Chicago. **Glenn Serratt** told me the murder was not planned and was the result of him getting caught by the man in a motel room that he went into to steal money. **Glenn Serratt** told me that since he got twenty thousand dollars ($20,000) out of the room, it was worth it.

On several occasions, **Glenn Serratt** told me he was a heavy drug user and ususally stole cars or committed burglaries and sold the proceeds to get money to pay for his drugs. More than once, **Glenn Serratt** told me he would play pool for money in

bars and taverns. Two places **Glenn Serratt** told me he frequented was the "Zoo" and "Diamond Don's", the latter because his regular drug dealer lived in an apartment above the bar.

**Glenn Serratt** told me that one night in 1989 he was in a bar across the street from the "Zoo" playing pool with a man when he learned the man was from out-of-town. **Glenn Serratt** told me the man said he was in Chicago for a car auction and that he was going to buy a few cars. **Glenn Serratt** told me that he immediately became interested in the man and asked him a lot of questions about cars and the kinds he was looking for in order to gauge how much money the man had. **Glenn Serratt** told me that after talking to the man, he decided he was going to rob him. **Glenn Serratt** told me that since the man was smaller than himself, he tried to get the man to go outside so he could threaten him, and maybe hit him if he had to. **Glenn Serratt** told me that as he was thinking of ways to get the man outside the man asked him if he knew of any other bars? **Glenn Serratt** told me that he suggested another place and the man and **Glenn Serratt** left the bar.

**Glenn** Serratt told me that when he and the man got outside, it was **Glenn Serratt's** intention to simply threaten and try to intimidate the man into parting with his money. **Glenn Serratt** told me that when he and the man got outside, there were people

in the parking lot so he changed his plans. **Glenn Serratt** told me that he and the man walked towards the car the man said was his and when they reached it, the man told him to wait for a minute and went to a motel room a few yards away. **Glenn Serratt** told me that when he seen the car was brand new, he wanted it.

**Glenn Serratt** said the man stood arguing with someone at the door so he positioned himself so that he could see inside the room. **Glenn Serratt** told me that he saw another man inside the room. **Glenn Serratt** told me he and the man from the bar got in the car and he directed them to another bar, well away from the hotel. **Glenn Serratt** told me that when they reached the bar he tried to get the man to park in back, where he could take his money and force him out of the car, but the man parked right in front instead. **Glenn Serratt** told me that the bar he had taken the man to was where a lot of muggings and fights took place so the man getting beat up and robbed here would not be a big deal to police.

**Glenn Serratt** told me that when he and the man went inside the bar, the man did not want to stay because the bar was mostly occupied by blacks. **Glenn Serratt** told me he convinced the man to stay by stating they were at the bar only to pick up some drugs from a man Glenn Serratt had called. **Glenn Serratt** told me he looked around inside the bar for someone he knew to help

him find and buy some drugs. **Glenn Serratt** told me that although it took only a few minutes to obtain some cocaine, the man was gone when he returned to the table where he had left him. **Glenn** went outside and the man was inside the car waiting for him.

Glenn Serratt told me that he then decided to take the man to his neighborhood and rob him. **Glenn Serratt** told me that after they got near the area, they got pulled over by police for drinking and driving. **Glenn Serratt** told me that he knew one of the cops because he had been arrested by him several times. **Glenn Serratt** told me that he told the cop he knew the man had cocaine in the car and after it was found, he was let go to walk home. **Glenn Serratt** told me he went to get his coat from the car and saw the man's motel room key and took it.

Glenn Serratt told me that he went to the motel room the man had been in. **Glenn Serratt** told me it was about 2:00 a.m. when he got there and because there were no lights on inside the room, he was unsure whether there was it was occupied or not. **Glenn Serratt** told me he waited on some stairs for awhile and decided to go inside the room using the key. **Glenn Serratt** told me that at the time he entered the room, he had a knife which he wore in a case on his belt.

Glenn Serratt told me that once he entered the room, he could see someone sleeping on the bed. **Glenn Serratt** told me

<u>Fehill Affidvait-Page 7</u>

the room was dark and he had he could not see very well. **Glenn Serratt** told me he tried to be quiet while searching the room but the person on the bed woke up. **Glenn Serratt** told me when he saw that he was not going to be able to talk his way out of the room, and the man was going to call the cops, he stabbed him. **Glenn Serratt** told me the man fell back on the bed and he thought he was dead so he began searching the room for the money he believed was there. **Glenn Serratt** told me that as he was looking around the room, the man had moved from the bed and was almost to the door.

Glenn Serratt told me that he stabbed the man several more times but he got away from him and tried to drag himself to the bathroom. **Glenn Serratt** told me the man died before reaching the bathroom. **Glenn Serratt** told me he then went through the room and eventually found the money in a drawer. **Glenn Serratt** told me that he also took the man's wallet in which there was a few hundred dollars and a credit card. **Glenn Serratt** told me he eventually gave the card to Rhonda Serratt. **Glenn Serratt** told me that after committing the murder, he went to his drug dealer's house and paid off a debt. **Glenn Serratt** told me that he cut himself during the incident.

9. Glenn Serratt told me, in what I would describe as bragging terms, that he had never been caught in connection

with the 1989 murder. **Glenn Serratt** told me he would never be caught, because another had been convicted. I pointedly asked **Glenn Serratt** how another person had been convicted of a crime he committed and his response was evasive and unclear. What was clear, however, was that he did not want to discuss that aspect and would always change the subject whenever I asked him about this. Eventually, over the course of several months, **Glenn Serratt** told me that he had played the role of a witness in the case against another man and that he was never placed under suspicion or investigation.

10. Based on several partial conversations, comments and remarks made to me by **Glenn Serratt** during the course of the year of 2002 regarding the 1989 murder, I have reconstructed for the purposes of this document the chronology of the events and facts material to its subject matter. I have purposely omitted each date on which a conversation took place between myself and **Glenn Serratt** regarding the 1989 murder because I cannot recall each date separate. These conversations took place often times between just myself and **Glenn Serratt** but on occasion, a third party, Sean Coffin, also a resident at the Peoria ATC at the time, was present. Whether Sean Coffin and **Glenn Serratt** also spoke of the 1989 murder I do not know. I do know that the

Fehill Affidavit—Page 9

relationship between Sean Coffin and **Glenn Serratt** was very close and the 1989 incident in which **Glenn Serratt** claimed to have been responsible for bears a striking similarity to that for which Sean Coffin is currently awaiting trial in the county jail in Peoria.

Affiant further sayeth not.

> "OFFICIAL SEAL"
> ELIZABETH A. ROBSON
> Notary Public, State of Illinois
> My Commission Exp. 10-10-06

Affiant – **Charles Fehill**
1533 Western Ave.
Peoria, IL. 61603

SUBSCRIBED and SWORN to before me
this ____ day of February, 2004.

NOTARY PUBLIC

# EXHIBIT

IN THE CIRCUIT COURT OF THE COOK JUDICIAL CIRCUIT
COOK COUNTY, ILLINOIS

THE PEOPLE OF THE      )
STATE OF ILLINOIS,     )
                       )
          Plaintiff,   )
                       )
     -vs-              )      No. 90 C5 50049
                       )
PHILLIP MCDOWELL,      )
                       )
          Defendant.   )

          REPORT OF PROCEEDINGS of the hearing had
before the Honorable COLLEEN MCSWEENEY-MOORE on the 27th day
of February, 2009.

          PRESENT:

               HON. ANITA M. ALVAREZ,
                    State's Attorney of Cook County, by:
               MS. CELESTE STACK,
               MR. MARK ERTLER,
                    Assistant State's Attorneys
                    on behalf of the People.

               Defendant appeared pro se.

Barbara J. Smith, CSR 084-001938
Official Court Reporter
10220 South 76th Avenue
Bridgeview, Illinois 60455

EXHIBIT C

1

2

3

4

5

6

7

8                          INDEX

9      People vs. Phillip McDowell
       No. 90 C5 50049
10
       DATE: 2-27-09
11
       PAGES: 1 - 12
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

THE CLERK:  Sheet 1, Phillip McDowell.

MS. STACK:  Good morning.  Celeste Stack and Mark Ertler on behalf of the People.

MR. ERTLER: Good morning.

THE COURT:  Good morning.

Defendant appears pro se.

MS. STACK:  As you know, Miss Norwell is the primary counsel on this.  She is ill.  I spoke to her yesterday. It's my understanding that we are about to file a response to his 1401 petition and that also there is a DNA petition that Mr. Ertler is here to address under 1163.  And I believe we also were trying to work on some of the discovery issues for the hearing while the other matters were taken care of.

Is that an accurate portrayal of the status?

THE DEFENDANT:  I believe so.

THE COURT:  So, do you have a response to the 21401?

MS. STACK:  1401 petition is just about finished.  There is one issue where there has been some case law developments. And Mr. Ertler has an objection.

MR. ERTLER:  Although only recently having come into this matter, taking over for Mr. Hovey, I have in order to keep things moving along, I have prepared for filing today a motion asking the Court to deny the DNA request based upon the fact that the defendant plead guilty.

3

I am prepared to file that and argue that today if you wish. However, if the Court wants to consolidate the handling of these various issues, I can hold off. And I will do whatever the Court pleases in that regard.

THE COURT: Well, are you prepared to proceed on the DNA request today, Mr. McDowell?

THE DEFENDANT: I could, if you would like.

THE COURT: Why don't you file your motion.

MR. ERTLER: May I approach?

THE COURT: Yes.

MR. ERTLER: I ask the record to reflect that through the Deputy Sheriff I am tendering a copy to the defendant.

THE COURT: All right. Let's pass it. Mr. McDowell, you could look at the State's motion and then let me know if you are ready to proceeded today or not. Okay?

THE DEFENDANT: Sure.

THE COURT: All right.

MS. STACK: I have a kid home alone sick. Is it going to be solely for the DNA after the break?

THE COURT: Yes, because we are awaiting the 21401, so we will not proceed on that.

MS. STACK: We can probably get that filed and sent to Mr. McDowell so at the next court date we can argue.

3

4

5

THE COURT:  Where are you being housed?

6

THE DEFENDANT:  Statesville.  But any time they need --

7

I mean reasonable, of course, I will stay at Statesville to

8

await their response.  I am ready today.

9

MS. STACK:  Okay.  We will get our pleadings to

10

Statesville in a week and one-half.

11

THE COURT:  All right.

12

THE DEFENDANT:  We will be back in a little while then?

13

THE COURT:  Yes.

14

(Whereupon, the case was passed and later

15

recalled.)

16

THE CLERK:  Phillip McDowell.

17

THE COURT:  Have you had an opportunity to review the

18

State's motion to dismiss as well as the case they cited

19

People versus O'Connell (phonetic spelling)?

20

THE DEFENDANT:  Yes, I have.

21

THE COURT:  Are you ready to proceed on their motion?

22

THE DEFENDANT:  Yes, ma'am.

23

THE COURT:  State, any additional argument?

24

MR. ERTLER:  I think the argument set forth from our

25

motion as well as case, itself, is fairly clear the defendant

26

not entitled to relief under 1163 because he plead guilty.

27

Only provides relief where there is a trial and identity is

28

an issue.

29

5

Based upon that and other reasons set forth in our written motion, we ask that this Court deny his -- defendant's request for post-conviction DNA testing.

THE DEFENDANT:  Yes, your Honor.  I believe on January 4, 2008, initially filed a motion for discovery.  February 22 of 2008, because People versus O'Connell, I filed a second motion for discovery, citing therein People versus O'Connell.  And this was the case for my filing the second motion.

I am fully aware that the Supreme Court, People versus O'Connell, declined to extend 1163 to people that plead guilty.  And I have filed my motion on 1226 Post-conviction Act requesting the -- that your Honor use its discretion in order to fingerprint and DNA.  I did not file a 1163.  Although counsel's argument is towards 1163, which is not my case, it's not the case here today.

MR. ERTLER:  If I may, I have a copy of a pleadings signed by Mr. McDowell which is, first sentence, now comes Phillip W. McDowell, pro se, and pursuant to Section 1163 of the Illinois Code of Criminal Procedure.  He is asking for relief citing that statute.

THE DEFENDANT:  And counsel is correct, your Honor.  However, I did that in front of Judge Kennedy, June 1, 2006.  I believe that should be the date as well on that pleading.  And advised the Court in my 2/22/08 motion, amended motion for

6

post-conviction discovery, that I was explicitly withdrawing that motion because of People versus O'Connell.

THE COURT:  Do you have a copy of that document you are referring to?

THE DEFENDANT:  Yes.  I believe I have attached to it People versus -- affidavit of Abahill (phonetic spelling), affidavit of Salvador Ortiz (phonetic spelling).  And initially, your Honor, my request for subpoenas of 111208, I referred to that document as well and requested subpoenas be issued to Michael Sherwin, Mr. Ortiz, and Mr. Abahill. Proceed at that point, which was going to be a November 21, 2008 hearing on the matter.  My notes indicate that the State was going to object to the request for subpoenas.  State also indicated at the time that was going file subpoenas itself to Illinois State Police regarding the matter.  And again, I reiterate that O'Connell does not have any part to play with it anyway.

I have a copy of the request for subpoenas that I did mail to all parties.

Mr. Ertler, do you want to look at it?

THE COURT:  Tendering amended motion for post-conviction discovery.

MR. ERTLER:  May I be heard?

THE COURT:  Yes.

MR. ERTLER:  Your Honor, what Mr. McDowell is referring to, the motion filed February, 2008, essentially amounts to a thinly veiled attempt to by-pass the 1163 statute and Illinois Supreme Court holding in the O'Connell case.  Only the remedy that allows for post-conviction DNA testing in Illinois is created by 1163.

Mr. McDowell acknowledges that the Illinois Supreme Court has held that a defendant who pleads guilty is not entitled to relief under that statute.  There is case law governing post-conviction discovery.  But we are not talking about discovery here.  Mr. McDowell may use the word discovery.  But what he is doing is asking for a post-conviction DNA testing.  That's not discovery.  Discovery refers to items that already exist and are already known.  Testing has not been done.  Then you cannot apply the rules of discovery to something that does not yet exist.  Again, I think this is really nothing but an attempt to by-pass the holding in O'Connell.  And People maintain their position that Mr. McDowell is not entitled to post-conviction DNA testing for the reasons we have already argued.

THE COURT:  Anything further?

THE DEFENDANT:  Could I have my --

THE COURT:  Yes, give that back to him.

THE DEFENDANT:  I think I made it very clear.  He is

right to a certain degree.  I am going around People versus O'Connell because, in fact, it does not provide in my situation to utilize a post-conviction process.  It says you cannot use it as a matter of law.  Defendant who plead guilty cannot avail themselves unfortunately. Excuse me.   There is nothing in O'Connell which would suggest that a defendant who plead guilty cannot assert his actual innocence.  And in this instance here, we do have a remand, Illinois Supreme Court, specifically for actual innocence.

Essentially, counsel's position would be anyone who plead guilty, even if the Supreme Court or other Court felt there was innocence, still could not prove.  You could listen to his claim but not prove up his innocence with factual evidence which in this case would be fingerprints or DNA.

So, I disagree with counsel's conclusion; but I am going around it.

THE COURT:  Mr. McDowell, I think that your motion for DNA discovery was, in fact, a very creative attempt to do through the back door what you cannot do through the front door.

And O'Connell took into consideration the very argument that you just made.  Supreme Court said defendant argues that the purpose of Section 1163 to exonerate innocent

defendants is best served by allowing defendants who plead

guilty to seek DNA testing. Defendant suggests an individual

may plead guilty to a crime despite his innocence in order to

obtain lesser charges or reduced sentence.   Which you did.

We are, however, constrained by the plain language of the

statute.   We reiterate a defendant who plead guilty may not

use Section 1163 as a means to request DNA testing.

State's motion to dismiss is granted.   Motion

to deny DNA is granted.

What date is good for the 21401?   State will

mail their response to you, Mr. McDowell, in the next ten

days.

MR. ERTLER:  Miss Stack has suggested any date that was

convenient to the Court's --

THE COURT:  How is 4-17?

MR. ERTLER:  Fine.  I will let her and Miss Norwell

know.

THE DEFENDANT:  Yes, it's fine.

THE COURT:  4-17, that will be with for hearing on the

21401 petition.

MR. ERTLER:  So I could relay the correct information,

State has ten days to file the response?

THE COURT:  That's what Miss Stack said she was going to

do.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

MR. ERTLER:  Yes.

THE COURT:  And mail it to Mr. McDowell at Statesville.

THE DEFENDANT:  Thank you.

THE COURT:  That completes the call.

        (Whereupon, further proceedings were

        continued to 4-17-09.)

1    STATE OF ILLINOIS    )
                          )  SS:
2    COUNTY OF COOK       )

3

4              I, BARBARA J. SMITH, Official Shorthand

5    Reporter of the Circuit Court of Cook County, Criminal

6    Division, do hereby certify that I reported in shorthand the

7    evidence had at the above entitled cause and that the

8    foregoing is a true and correct transcript of all the

9    evidence heard.

10

11

12

13   _____
     Official Shorthand Reporter
14   Circuit Court of Cook County
     Criminal Division

15

16

17

18

19

20

21

22

23

24


                              12

STATE OF ILLINOIS )
                  )  SS.
COUNTY OF COOK    )

FILED
05-101
FEB 27 2009
CLERK OF THE CIRCUIT
COOK COUNTY COURT

GRANTED
2/27/09

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,  )
    Respondent – Plaintiff,        )
                                   )  No. 90C5-50049
           v.                )  Hon. Colleen McSweeney-Moore,
                                   )  Judge Presiding
PHILLIP McDOWELL                   )
    Petitioner – Defendant.        )

## PEOPLE'S MOTION TO DISMISS PETITION FOR POST-CONVICTION DNA TESTING

NOW COME the People of the State of Illinois, by their Attorney, ANITA ALVAREZ, State's Attorney of Cook County, through her Assistant, Mark A. Ertler, and respectfully request that this Honorable Court deny Petitioner's request for post-conviction DNA testing due to the fact that this case does not meet the requisite criteria of 725 ILCS 5/116-3. In support thereof, the People state the following:

1. The petitioner is seeking post-conviction DNA testing pursuant to 725 ILCS 5/116-3 *et seq.*

2. One of the *prima facie* requirements that a petitioner must meet to be eligible for relief under the statute is that "...identity was the issue in the trial which resulted in his or her conviction[.]" 725 ILCS 5/116-3 (b)(1).

3. Petitioner fails to meet this *prima facie* requirement. His identity was not at issue because Petitioner **plead guilty** in the above captioned case on August 17, 1992 and was

sentenced to 60 years imprisonment on June 23, 1993. The statute is unambiguous in its use of the word "trial." In *People v. O'Connell*, the Illinois Supreme Court addressed the very issue now before this Court. The court held that a defendant who has plead guilty to the charges in a particular case may not subsequently seek relief in that case under section 116-3. *People v. O'Connell*, 227 Ill. 2d 31, 879 N.E.2d 315 (2007). This Court need go no further in assessing the petitioner's request for DNA testing, as his case clearly does not even meet the threshold statutory requirements that would make him eligible for consideration of an order for post-conviction testing.

WHEREFORE, the People respectfully request that this Honorable Court deny the petitioner's request for post-conviction DNA based upon the reasons stated above. The People further request that this Court dismiss the petition for DNA testing and that this cause be terminated without further proceedings.

Respectfully submitted,

Mark A. Ertler
Assistant State's Attorney

Office of the Cook County State's Attorney
2650 S. California, Room 11C39
Chicago, IL 60608
773-869-5832



LEXSEE 227 ILL 2D 31

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN O'CONNELL, Appellee.

### Docket No. 102707

### SUPREME COURT OF ILLINOIS

### 227 Ill. 2d 31; 879 N.E.2d 315; 2007 Ill. LEXIS 1700; 316 Ill. Dec. 248

### November 29, 2007, Opinion Filed

**PRIOR HISTORY:**   Appeal from the Appellate Court for the First District.
*People v. O'Connell, 365 Ill. App. 3d 872, 850 N.E.2d 278, 2006 Ill. App. LEXIS 309, 302 Ill. Dec. 841 (Ill. App. Ct. 1st Dist., 2006)*

**DISPOSITION:**  [***1]   Appellate court judgment vacated; circuit court judgment affirmed.

**COUNSEL:** For People State of Illinois, APPELLANT: Ms. Lisa M. Morrison, Assistant State's Attorney, Hon. Lisa Madigan, Attorney General, Criminal Appeals Div., Chicago, IL.

For John O'Connell, APPELLEE: Ms. Heidi Linn Lambros, Assistant Appellate Defender, Chicago, IL.

**JUDGES:** JUSTICE KILBRIDE delivered the judgment of the court. Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION BY:** KILBRIDE

**OPINION**

[**316] [*32] JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, Karmeier, and Burke concurred in the judgment and opinion.

In attempting to raise an actual-innocence claim, defendant, John O'Connell, filed a *pro se* motion for DNA testing pursuant to *section 116-3* of the Code of Criminal Procedure of 1963 (Code) (*725 ILCS 5/116-3* (West

2002)). The circuit court of Cook County denied defendant's motion. The appellate court reversed the trial court's order denying defendant's motion for DNA testing and remanded the cause for further proceedings. *365 Ill. App. 3d 872,* [*33] *850 N.E.2d 278, 302 Ill. Dec. 841.* This court allowed the State's petition for leave to appeal pursuant to *Supreme Court Rule 315* (210 Ill. 2d R. 315). We now vacate the judgment of the appellate court and affirm the trial court's denial of defendant's *pro se* motion to allow DNA testing.

BACKGROUND

Defendant, John O'Connell, pled guilty to three counts [***2] of first degree murder, two counts of aggravated criminal sexual assault, and one count of armed robbery. Prior to accepting defendant's guilty plea, the trial court admonished defendant that he had the right to a jury trial and to present a defense. Defendant told the trial judge that he understood his rights but wished to waive them and plead guilty.

The stipulated factual basis informed the court that at noon on September 7, 1990, defendant entered a flower shop where the 64-year-old victim worked. Defendant sexually assaulted the victim, beat her, stabbed her in the stomach, stole money from the cash register, and fled. Defendant was later arrested near the scene.

[**317] At the time he was arrested, defendant had blood on his underwear, shirt, and hands, and money from the flower shop in his pants' pocket. A blood-covered knife was found in defendant's van. Later that same day, defendant made an inculpatory statement. The victim suffered severe injuries and, six days later, died of complications.

The trial court admonished defendant of the possible sentences, including the potential death sentence. Defen-

dant told the court he still wanted to plead guilty. The trial court accepted defendant's [***3] guilty plea and sentenced defendant to concurrent terms of natural life imprisonment for three counts of murder, two extended-term sentences of 60 years for each count of aggravated criminal sexual assault, and 30 years' imprisonment for armed robbery.

[*34] Defendant subsequently filed a motion to re-consider the sentence but told the trial court he did not want to withdraw his guilty plea. The trial court did not reduce defendant's sentence, and defendant appealed. The appellate court affirmed. *People v. O'Connell*, No. 1-93-0200 (1995) (unpublished order under *Supreme Court Rule 23*).

Defendant later filed a *pro se* postconviction petition alleging his extended-term sentences violated *Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d. 435, 120 S. Ct. 2348 (2000)*. The trial court dismissed the petition. The appellate court affirmed the circuit court's summary dismissal of defendant's postconviction petition, but ordered the trial court to correct the mittimus to reflect a single conviction for first degree murder. *People v. O'Connell*, No. 1-01-0421 (2002) (unpublished order under *Supreme Court Rule 23*).

After his direct appeal and postconviction proceedings, defendant filed the instant *pro* [***4] *se* motion to allow DNA testing pursuant to *section 116-3* of the Code (*725 ILCS 5/116-3* (West 2002)). *Section 116-3* allows a defendant to make a motion for fingerprint or forensic testing "not available at the time of trial" when "identity was the issue in the trial" resulting in defendant's conviction. *725 ILCS 5/116-3(a), (b)* (West 2002).

The trial court denied defendant's motion for DNA testing. The trial court reasoned that defendant failed to establish a *prima facie* case for DNA testing because "identity was not at issue at trial" when defendant pled guilty. The trial court subsequently denied defendant's motion to reconsider, and defendant appealed.

The appellate court reversed the trial court's denial of defendant's motion for DNA testing and remanded for further proceedings. *365 Ill. App. 3d 872, 850 N.E.2d 278, 302 Ill. Dec. 841*. The appellate court held that *section 116-3* does not allow for summary dismissal of motions for DNA testing. The appellate [*35] court also held that any error was not harmless because counsel may have been able to argue persuasively that identity was at issue at trial, despite defendant's guilty plea. The State timely appealed pursuant to *Supreme Court Rule 315* (210 Ill. 2d R. 315). We allowed [***5] the State's petition for leave to appeal.

ANALYSIS

The State appeals from the judgment of the appellate court reversing the trial court's denial of defendant's motion for DNA testing pursuant to *section 116-3* of the Code (*725 ILCS 5/116-3* (West 2002)). We review *de novo* the trial court's denial of a motion for DNA testing under *section 116-3*. *People v. Brooks, 221 Ill. 2d 381, 393, 851* [**318] *N.E.2d 59, 303 Ill. Dec. 161 (2006); People v. Shum, 207 Ill. 2d 47, 65, 797 N.E.2d 609, 278 Ill. Dec. 14 (2003)*.

This case presents an issue of first impression before this court. We must determine whether, as a matter of law, *section 116-3* allows a defendant who pleads guilty to make a motion for DNA testing. Our resolution of this case is a straightforward statutory construction of the threshold requirements of *section 116-3*. We begin with a review of *section 116-3*.

In 1998, the legislature enacted *section 116-3*, outlining the process defendants must follow to obtain fingerprint or forensic DNA testing not available at trial when actual innocence was at issue during trial. *725 ILCS 5/116-3* (West 2000). *Section 116-3* provides, in relevant part:

"Motion for fingerprint or forensic testing not available at trial regarding actual innocence.

(a) A defendant may make a motion [***6] before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. ***

[*36] (b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." *725 ILCS 5/116-3* (West 2002).

This court has previously considered *section 116-3* in the context of a defendant's burden to obtain forensic testing. In *People v. Savory, 197 Ill. 2d 203, 756 N.E.2d 804, 258 Ill. Dec. 530 (2001)*, we examined whether evidence a defendant sought to test pursuant to *section 116-3* was materially relevant to his claim of actual innocence. In *Shum, 207 Ill. 2d 47, 797 N.E.2d 609, 278 Ill. Dec. 14*, we considered whether a defendant made a *prima facie* case under *section 116-3* for DNA testing to establish actual innocence. Most recently,   [***7] in *Brooks, 221 Ill. 2d 381, 851 N.E.2d 59, 303 Ill. Dec. 161*, we considered whether a defendant was entitled to polymerase chain reaction (PCR) DNA testing when the testing was available at the time of the defendant's trial. Those cases all involved an analysis of the statutory requirements for *section 116-3* testing following a trial and conviction. Analysis under that line of cases is irrelevant to a case involving a guilty plea.

Before any analysis of the statutory requirements to allow DNA testing, the initial issue is the applicability of the statute. The parties and the lower courts did not examine the threshold requirements. We now construe the terms of *section 116-3* to determine whether defendants who enter guilty pleas may make a motion for DNA testing.

"The primary rule of statutory construction is to determine and give effect to the intent of the legislature." *Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill. 2d 429, 441, 593 N.E.2d 522, 170 Ill. Dec. 633 (1992)*. The statutory language itself is the best indicator of legislative intent. *Burke, 148 Ill. 2d at 441-42*. [***37]

The plain language of *section 116-3* states that the motion is intended for performance of "fingerprint or forensic testing *not available at trial* regarding actual [**319] innocence." (Emphasis   [***8] added.) *725 ILCS 5/116-3* (West 2002). This court has recognized that the plain language of *subsection (a) of section 116-3* requires a defendant show (i) the evidence in question was not subject to the requested test at the *time of trial*; and (ii) the evidence was not subject to testing because the requested test was unavailable *at the time of defendant's trial. Brooks, 221 Ill. 2d at 393*. The plain language of *subsection (b)* further requires a defendant present a *prima facie* case of identity at issue *at his trial* and the evidence to be tested has been under a secure chain of custody. *725 ILCS 5/116-3(b)* (West 2002).

A *section 116-3* motion for forensic testing is a legislatively created right. " 'Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions.' " *Mattis v. State*

*Universities Retirement System, 212 Ill. 2d 58, 78, 816 N.E.2d 303, 287 Ill. Dec. 541 (2004)*, quoting *Bridgestone/Firestone, Inc. v. Aldridge, 179 Ill. 2d 141, 151-52, 688 N.E.2d 90, 227 Ill. Dec. 753 (1997)*. See also *Burke, 148 Ill. 2d at 442* ("Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of   [***9] limitation"). The plain and unambiguous language of *section 116-3* permits a motion for DNA testing only when a defendant has been *convicted following a trial* contesting identity.

Accordingly, as a matter of law, defendants who plead guilty may not avail themselves of *section 116-3*. Those defendants are a separate group who have not contested identity at trial. Accordingly, based on our statutory construction, we conclude the appellate court erroneously determined *section 116-3* permits a defendant who pleads guilty to argue that identity was at issue, despite his guilty plea. *365 Ill. App. 3d at 877-78*.

[*38] Nonetheless, defendant argues that the purpose of *section 116-3*, to exonerate innocent defendants, is best served by allowing defendants who plead guilty to seek DNA testing. Defendant suggests an individual may plead guilty to a crime, despite his or her innocence, to obtain lesser charges or a reduced sentence. We are, however, constrained by the plain language of the statute. We reiterate, a defendant who pleads guilty may not use *section 116-3* as a means to request DNA testing.

On a final point, the appellate court also concluded that *section 116-3* does not expressly provide for summary   [***10] dismissal of motions for DNA testing and that a defendant has a right to notice and an opportunity to respond before ruling on the motion. The trial court did not, however, "summarily" deny or dismiss defendant's motion. See *People v. Vincent, 226 Ill. 2d 1, 11, 871 N.E.2d 17, 312 Ill. Dec. 617 (2007)* (the term "summary dismissal" is unique to the Post-Conviction Hearing Act (*725 ILCS 5/122-2.1* (West 2004))). Rather, the trial court *sua sponte* denied defendant's motion for DNA testing after determining that defendant's motion did not provide a legal basis for the request. "[A] trial court may, on its own motion, dispose of a matter [*sua sponte*] when it is clear *** that the requesting party is not entitled to relief as a matter of law." *Vincent, 226 Ill. 2d at 12*. We hold that the trial court did not err in *sua sponte* denying defendant's motion for *section 116-3* testing when defendant's motion was insufficient, as a matter of law, because defendant pled guilty rather than proceeding to trial.

[**320] CONCLUSION

We determine that the trial court correctly denied defendant's request for DNA testing as a matter of law. We further conclude the appellate court overlooked the

227 Ill. 2d 31, *; 879 N.E.2d 315, **;
2007 Ill. LEXIS 1700, ***; 316 Ill. Dec. 248

plain and unambiguous language of *section 116-3* in reversing [***11] the trial court's denial of defendant's motion for DNA testing. We therefore vacate the judgment of the appellate court and affirm the trial court's denial of defendant's *section 116-3* motion for DNA testing.

*Appellate court judgment vacated;*

*circuit court judgment affirmed.*