## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP McDOWELL (B-46854), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 8033 |
| | ) | |
| | ) | Judge John J. Tharp, Jr. |
| ANITA ALVAREZ, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Philip McDowell, an inmate currently incarcerated at Danville Correctional Center, filed this 42 U.S.C. § 1983 suit against Cook County, Cook County State's Attorney Anita Alvarez, and the Village of Alsip. Plaintiff seeks access to DNA and fingerprint evidence gathered in the investigation of the murder of Joseph Pankey. Plaintiff pleaded guilty to the murder in 1993. In 2006 and 2008, he filed state post-conviction motions in the Circuit Court of Cook County seeking access to the evidence. After the state trial court denied Plaintiff's 2008 motion, Plaintiff brought this action. On September 8, 2010, Judge Ronald Guzman denied motions to dismiss filed by Defendants Alvarez and the Village of Alsip and stayed this case because Plaintiff's state post-conviction proceeding was still pending in state court. (Doc. #72.) On July 1, 2011, Plaintiff voluntarily dismissed his state post-conviction petition, and on September 28, 2011, Judge Guzman granted Plaintiff's request to lift the stay. (Doc. #92.) The case was transferred from Judge Guzman to the undersigned judge effective June 5, 2012.

Defendants, the State's Attorney and the Village of Alsip, have each again filed a motion to dismiss.[1] As in their prior motions to dismiss, the Defendants contend that Plaintiff is barred from raising his claims in this court under either the *Rooker-Feldman* doctrine or *res judicata*. Defendant Alvarez additionally contends that Plaintiff's failure to avail himself of state court remedies before filing this suit prohibits him from proceeding with the current case, and also that denying post-conviction access to DNA evidence to individuals who have pleaded guilty does not violate the Constitution. The Village of Alsip separately maintains that Plaintiff has failed to allege a violation of municipal policy sufficient to state a claim under § 1983 against the Village, which is alleged to have done nothing more than turn the DNA evidence collected over to Cook County. Plaintiff has responded to both motions to dismiss. For the following reasons, the Court grants Defendants' motions.

---

[1] Although the docket entry relating to the motion to dismiss filed by State's Attorney Alvarez indicates that the motion was filed by both defendant Alvarez and defendant Cook County, the motion itself does not purport to have been filed on behalf Cook County and is not signed on behalf of Cook County. Presumably, the Assistant State's Attorneys who are representing defendant Alvarez are also representing Cook County (that is the way the Court's docket sheet reads) but a review of the docket reflects that they have never entered an appearance on behalf of the County. The State's Attorney and County are distinct entities who have been sued separately and as to which different substantive law may apply. The State's Attorney, for example, is a state official. *See Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994); *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369 (1990). Thus, unlike the County, which can be sued for damages, she can be sued for prospective relief only under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (state officials may be sued only for prospective relief under § 1983; *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 452 (2010) (explaining that local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy or custom).The Court, however, discerns no material distinction between the State's Attorney and the County with respect to the grounds for this decision (the Plaintiff seeks only prospective relief, for example), and the reasons for the Court's dismissal of Plaintiff's claims against the State's Attorney apply equally to Cook County. Moreover, Plaintiff has made no attempt to differentiate among defendants in the Complaint or in response to the motions to dismiss.

## BACKGROUND[2]

In 1992, Plaintiff McDowell pleaded guilty to the 1989 murder of Joseph Freeman-Pankey (a plea he unsuccessfully attempted to withdraw later on). Pankey was stabbed to death in his hotel room in Alsip, Illinois, and his Buick Regal was stolen. Plaintiff, who had traveled to the Chicago area with Pankey, was sentenced to 60 years of imprisonment. Eight years later, in December 2000, Plaintiff filed in state court a petition for a writ of habeas corpus, which the Circuit Court denied. The denial was affirmed on appeal, but the Illinois Supreme Court remanded the case to the Circuit Court in 2002, directing that the habeas petition be treated as a petition for post-conviction review, *see* 725 ILCS 5/122-1 *et seq*, and ordering an evidentiary hearing on Plaintiff's claim of actual innocence.[3]

In the course of the post-conviction proceedings, Plaintiff filed two requests for access to the fingerprint and DNA evidence from his criminal case. First, in 2006, he filed a petition under 725 ILCS 5/116-3 seeking access to the evidence. (This petition is not in the record, but other documents provided with the complaint refer to Plaintiff's withdrawal of that 2006 petition; *see*

---

[2] None of the parties have submitted state court records clearly setting out the history of Plaintiff's state court proceedings. This Court has thus used various parts of pleadings for background information. "[C]ourts may take judicial notice of public records, such as complaints, pleadings, and transcripts from another proceeding when deciding a motion to dismiss." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[3] It appears that Plaintiff's actual innocence claim was premised on allegations "that his plea was induced by a severe beating by Sheriff's deputies," Resp. to Alvarez Motion, at 2, though it is not clear whether the alleged beating occurred on the day of his arrest, the day of his plea, or another date. Plaintiff states that he moved to withdraw his plea on this basis before and after sentencing. *Id.* Plaintiff also filed a § 1983 suit against Cook County, the Cook County Sheriff, and various individual defendants in 1993 alleging that his guilty plea was the product of a beating administered by Sheriff's deputies. Cmplt. at 3. At Plaintiff's request, that case was dismissed with prejudice. *See* Case No. 93 C 1525, Minute Order, Doc. # 79 (N.D. Ill. Aug. 5, 1994).

Cmplt. Exs. C and D). Section 116-3 allows Illinois prisoners post-conviction access to DNA and other designated forms of forensic evidence for testing that was not available at the time of their conviction. To obtain such access, the movant must (among other requirements) make a prima facie showing that "identity was the issue in the trial which resulted in his or her conviction." 725 ILCS 5/116-3(b)(1). In *People v. O'Connell*, 879 N.E.2d 315, 319 (Ill. 2007). the Illinois Supreme Court held that "defendants who plead guilty may not avail themselves of section 116-3 . . . [given that] those defendants . . . have not contested their identity at trial." *Id.*

It does not appear that the state trial court ruled on Petitioner's § 116-3 petition in 2006. The state court documents in the record before this Court contain no such ruling. Also, the transcript of the state court hearing on Plaintiff's second request indicates that he withdrew his original petition pursuant to § 116-3, believing that it would be denied under *O'Connell*, and replaced it with an "Amended Motion for Post-Conviction Discovery" (hereafter, "discovery motion") in February 2008. (Cmplt. Ex. C, Transcript of 2/27/09 Hearing at 7.) The discovery motion sought access to precisely the same forensic evidence that Plaintiff had originally sought by means of the § 116-3 petition. (Cmplt. Ex. B.) The discovery motion recounted that, in 2007, Plaintiff's attorney in his criminal case was granted limited access to a box of evidence that contained fingerprint and DNA evidence collected during the murder investigation and that the evidence was still intact. (*Id.*) Plaintiff also stated that he was filing his request as a discovery motion because he knew that the access to evidence allowed under § 116-3 did not apply to persons who pleaded guilty. (Cmplt Ex. B at 2; Ex. C at 7.)

At a hearing on February 27, 2009, the Cook County Circuit Court granted the State's "Motion to Dismiss Petition for Post-Conviction DNA Testing" and granted the State's "motion

4

to deny DNA." (Cmplt. Ex. C, Transcript of 2/27/09 Hearing.) The state trial court held that, because Plaintiff pled guilty, he could not seek access to DNA evidence under § 116-3, and that he could not seek the same relief through a discovery motion in his post-conviction proceeding. (*Id.* at 9-10.) The state court explained that Plaintiff's post-conviction discovery motion "was, in fact, a very creative attempt to do through the back door what you cannot do through the front door. . . . State's motion to dismiss is granted. Motion to deny DNA is granted." (*Id.* at 9-10.)

Following the state court's ruling, Plaintiff brought this § 1983 suit in December 2009, alleging that the denial of access to the DNA evidence to establish his actual innocence violates his constitutional rights of procedural and substantive due process and equal protection. He seeks injunctive relief granting him the same access to evidence that the state court denied.

In July 2010, Defendants filed motions to dismiss, arguing that Plaintiff's § 1983 action is barred by the doctrines of *Rooker-Feldman* and *res judicata* or, alternatively, that Plaintiff's claim was not yet ripe because his post-conviction petition was still pending in state court. (R. 29 and 33, Motions to Dismiss.) On September 8, 2010, noting that Plaintiff's post-conviction petition was still proceeding in state court, the District Judge previously assigned to this case stayed proceedings in this Court while Plaintiff pursued his actual innocence claim in his state post-conviction proceeding. Doc. # 72 (Sept. 8, 2010).

Plaintiff's state post-conviction petition was scheduled for a hearing on July 15, 2011, but on July 1, 2011, Petitioner requested and was granted leave to voluntarily dismiss his state petition. (Doc. ## 84 and 86, Status Reports of Plaintiff and the State's Attorney.) Plaintiff then asked this Court to lift the stay in this case and, because no post-conviction proceeding was then pending in state court, this Court granted Plaintiff's request. Minute Order, Doc. # 92 (Sep. 28,

5

2011.) Defendants Alvarez and the Village of Alsip then moved to dismiss again. Doc. ## 97,

105. Plaintiff responded to both motions.

## DISCUSSION

In their motions to dismiss, Defendants argue that Plaintiff is barred from raising his

access-to-evidence claim in this Court based upon the doctrines of *Rooker-Feldman* and *res*

*judicata*. Defendant State's Attorney Alvarez further contends that Plaintiff cannot establish a

constitutional right to post-conviction access to evidence and that his case cannot proceed

because he did not exhaust state court remedies before bringing this case. The State's Attorney

and the Village also maintain that, even if Plaintiff's claims were not barred, he fails to state a

claim for any constitutional violation. Finally, Defendant Village of Alsip additionally argues

that it is not a proper defendant since the evidence sought is in the possession of the Cook

County Circuit Court and the complaint alleges no violation of Village policy.

### A. Standard of Review

The purpose of a motion to dismiss is not to determine whether a plaintiff "will

ultimately prevail" on his claims, "but whether his complaint [is] sufficient to cross the federal

court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). When reviewing a motion

to dismiss, a court considers true all well pleaded allegations, as well as any inferences

reasonably drawn therefrom. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Under the notice pleading requirement of Fed. R. Civ. P. 8(a), a complaint need only provide

enough information to provide sufficient notice of a federal claim and the grounds upon which it

rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In that regard, the complaint

must at least "plausibly suggest that the plaintiff has a right to relief, raising that possibility

6

above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 -77

(7th Cir. 2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). If a plaintiff pleads facts

demonstrating that he has no claim, a court may dismiss the complaint. *McCready v. eBay, Inc.,*

453 F.3d 882, 888 (7th Cir. 2006). Affirmative defenses, such as claim preclusion and the

*Rooker-Feldman* doctrine, that are clear from the complaint may be addressed in a motion to

dismiss as opposed to a summary judgment motion. *Muhammad v. Oliver,* 547 F.3d 874, 878

(7th Cir. 2008).

### B. *Rooker-Feldman*

The threshold question the Court must address in this matter is whether the Court lacks

subject matter jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* doctrine. The

*Rooker-Feldman* doctrine is rooted in the two Supreme Court decisions from which the doctrine

is named. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of*

*Appeals v. Feldman,* 460 U.S. 462 (1983). The essence of the doctrine is that federal district

courts do not have the authority to engage in appellate review of state court judgments. With the

exception of federal petitions for a writ of habeas corpus, Congress authorizes only the United

States Supreme Court to engage in appellate review of state court judgments. *See* 28 U.S.C. §

1257; *Gilbert v. Illinois State Bd. of Educ.,* 591 F.3d 896, 900 (7th Cir. 2010). Even if the state

court judgment is erroneous or unconstitutional, the *Rooker-Feldman* doctrine prevents a party

from seeking review of the judgment in a federal district court. *Id.* The Supreme Court recently

explained the *Rooker-Feldman* scenario as follows:

> The losing party in state court filed suit in a U.S. District Court after the state
> proceedings ended, complaining of an injury caused by the state-court judgment
> and seeking federal-court review and rejection of that judgment. Alleging federal-
> question jurisdiction, the plaintiffs in *Rooker* and *Feldman* asked the District

> Court to overturn the injurious state-court judgment. We held, in both cases, that
> the District Courts lacked subject-matter jurisdiction over such claims, for 28
> U.S.C. § 1257 "vests authority to review a state court's judgment solely in this
> Court."

*Skinner*, 131 S. Ct. at 1297. The *Skinner* Court noted that the doctrine had been applied "only in the two cases from which the doctrine takes its name," and the Court directed federal courts not to extend the doctrine beyond its "narrow ground." *Id.* The doctrine does not apply "[i]f a federal plaintiff 'present[s] [an] independent claim,'" even if the "'same or a related question' was earlier aired between the parties in state court." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005)). "Though a lower federal court may not sit in review over a state court judgment, a federal court is free to entertain claims that are independent of any state court proceedings." *Gilbert,* 591 F.3d at 900 (citing *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 555 (7th Cir. 1999) (*Rooker-Feldman* does not bar "a federal claim alleging a prior injury that a state court failed to remedy")).

*Skinner,* like the instant case, involved a challenge to a state law preventing post-conviction access to evidence. Years after his conviction, Skinner sought post-conviction access to evidence under Texas law, but was twice denied. Skinner then challenged the Texas law in a § 1983 action on procedural due process grounds, arguing that the state courts' construction of the Texas statute effectively foreclosed prisoners from ever obtaining post-conviction access to evidence. *Skinner,* 131 S. Ct. at 1296. Because Skinner did not challenge the state court decisions themselves, but instead the "unconstitutional[ity] [of] the Texas statute they authoritatively construed," *Rooker-Feldman* did not apply. *Skinner,* 131 S. Ct. at 1298. "[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.*

8

*Skinner* is dispositive of defendants' attempt to invoke the *Rooker-Feldman* doctrine. Here, like *Skinner*, Plaintiff "targets as unconstitutional the [Illinois laws that the state trial court] authoritatively construed." *Skinner*, 131 S. Ct. at 1298. In arguing that Plaintiff's suit in this Court is effectively an appeal of the state court's determination that Illinois law does not permit Plaintiff to obtain access to DNA evidence because he pled guilty, the defendants miss entirely the distinction between an argument about the meaning of a statute and one focused on its effects given an agreed meaning. Plaintiff's suit in this Court does not challenge the state court's ruling at all; to the contrary, it accepts the state court ruling as an accurate statement of state law. The question is not, "does the statute deny those who plead guilty post-conviction access to DNA evidence?," but—given that the state courts have answered that question affirmatively—"does that denial deprive those who plead guilty of their constitutional rights?" The *Rooker-Feldman* doctrine does not bar the presentation of that issue, which was not presented to the state court, in this Court. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) ("[t]he doctrine does not prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve questions related to those in the original state court proceedings," *citing Skinner*, 131 S. Ct. at 1197).

### C. Village of Alsip

Turning first to the Village of Alsip, the Village maintains that the allegations of the complaint fall short of plausibly alleging a § 1983 claim against it, and the Court agrees. As to the Village, Plaintiff alleges only that the DNA and fingerprint evidence was "collected at 1989 murder scene by Alsip Police," Cmplt. at 4, and was "discovered in 2007 intact in the custody of

Dorothy Brown, Cook County Circuit Court Clerk." These allegations do not suffice to establish that the Village is responsible for denying Plaintiff access to the DNA evidence from his case.

Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality is subject to liability under § 1983 only when the constitutional violation alleged flows from enforcement of a municipal policy, practice or decision of a final municipal policy maker. *Justice v. Town of Cicero,* 577 F.3d 768, 773 (7th Cir. 2009). Plaintiff's complaint is that he has been denied access to DNA evidence collected at the crime scene by Village police, but he has made no allegations that anyone associated with the Village has done anything at all to deny him access to that evidence (to the contrary, the complaint alleges that the Village turned the evidence over to the clerk of the Circuit Court), much less that the Village was following a policy or practice to preclude access to such evidence in post-conviction proceedings. Moreover, the Village did not prosecute Plaintiff or control the distribution of the evidence collected at the crime scene (that was the role of the State's Attorney), so there are no facts in the Complaint that suggest the Village did anything at all to deny Plaintiff access to the evidence he seeks. Plaintiff maintains in his Response brief that the Village has not turned all of the DNA evidence over to the Circuit Court, but that fact, even taken as true,[4] falls far short of plausibly alleging that the failure to turn over the rest of the evidence is part and parcel of a municipal policy or practice of withholding access to forensic evidence (as opposed, say, to the negligent loss of the remaining

---

[4] There is some tension between Plaintiff's statement that the Clerk of the Circuit Court had the evidence "intact" in 2007 and his claim that the Village retained some portion of the evidence.

evidence, or the isolated misconduct of an individual Village employee). Accordingly, Plaintiff's complaint fails to state a § 1983 claim against the Village.[5]

### D. *Res Judicata*

Under *res judicata*, a final judgment in a case prohibits litigants from relitigating claims that were—or could have been—litigated in the earlier proceeding. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). The preclusive result of a state court judgment is determined by the state's laws concerning the effects of its judgments. *See Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002); *see also Allen*, 449 U.S. at 96 ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so") (citing 28 U.S.C. § 1738). In Illinois, *res judicata* requires: (1) "a final judgment on the merits rendered by a court of competent jurisdiction;" (2) "an identity of cause of action;" and (3) "an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 703 N.E.2d 883, 889 (1998). "The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit." *Id.*

In this case, it is not immediately clear whether there has been a final judgment on the merits that would preclude Plaintiff's claim in this Court. Both defendants contend that "the Circuit Court of Cook County, a court of competent jurisdiction over all of McDowell's claims, determined that McDowell was not entitled to analyze and compare the physical evidence

---

[5] The Court does not consider whether the same argument might also have been advanced with respect to Cook County because, as noted above, the County itself did not file a motion to dismiss and the State's Attorney has not argued that the complaint fails to state a *Monell* claim against the County.

because he did not comply with the controlling statute (725 ILCS 5/116-3)." Defendant Village of Alsip's Motion to Dismiss, Doc. # 98, at 9; *see also* Defendant Alvarez's Motion to Dismiss Doc. # 106 at 9. True enough, but McDowell points out that the only state court decision addressing his access to DNA evidence was the February 2008 ruling that, he maintains, simply denied the motion for discovery he had substituted for his motion under § 116-3. Although the latter is a final judgment under Illinois law, *People v. Savory*, 756 N.E.2d 804, 809 (Ill. 2001), McDowell argues that he withdrew his statutory petition in favor of his "motion for post-conviction discovery." In contrast to the denial of a petition under § 5/116-3, a ruling on a discovery motion, absent a finding of contempt, does not generally constitute a final order. *Kmoch v. Klein*, 573 N.E.2d 267, 271 (Ill. App. Ct. 2d Dist. 1991). "A ruling which is not a final order does not in any manner affect or determine any subsequent proceeding." *Hernandez v. Bernstein*, 956 N.E.2d 558, 561 (Ill. App. Ct. 1st Dist. 2011) (citation and internal quotation marks omitted). And voluntary dismissal does not convert a non-final order into a final one. Although "a voluntary dismissal terminates the suit in its entirety, rendering all final orders immediately appealable, . . . 'a nonfinal order [does not] become[] final upon voluntary dismissal of a suit.'" *Id.* at 564 (quoting *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 995 (Ill. App. Ct. 1st Dist. 2009) and citing *Hudson v. City of Chicago*, 889 N.E.2d 210, 214 (Ill. 2008)). Thus, Plaintiff contends, his voluntary dismissal of his post-conviction did not itself render the discovery ruling a final judgment, and the state court's denial of his "discovery motion" is not *res judicata*.

Plaintiff's argument does no violence to logic, but several factors convince the Court that the state court's denial of his "discovery motion" constitutes no less a "final order" than does the

denial of a motion expressly pursuant to § 116-3 for purposes of assessing the order's preclusive effect. First, it is axiomatic that substance, not pleading labels, should determine the outcome of legal disputes. *United States v. Boyd*, 591 F.3d 953, 955 (7th Cir. 2010) ("Substance trumps form"); *United States v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986) ("a court is entitled to disregard labels and treat pleadings for what they are"); *Sarkissian v. Chicago Bd. of Education*, 201 Ill. 2d 95, 102 (2002) ("the character of a pleading is determined from its content, not its label"), citing *Barnes v. Southern Ry. Co.*, 116 Ill. 2d 236, 507 N.E.2d 494 (1987); *People v. Smith*, 371 Ill. App. 3d 817, 821 (4th Dist. 2007) ("a motion's content determines its character, not the title or label asserted by the movant"). For that reason, the Illinois Supreme Court has expressly rejected a defendant's argument "that he should have been considered 'master' of his claim and [that] the Circuit Court should not have overridden his choice of a procedural vehicle by which to seek relief." *People v. Pearson*, 216 Ill. 2d 58, 66, 833 N.E.2d 827, 831 (2005). Plaintiff admits that there is no substantive difference between his discovery motion and the first § 116-3 petition that he withdrew; he candidly acknowledged that he was "going around *People versus O'Connell*," the case holding that § 116-3 does not apply to defendants who pleaded guilty rather than contesting identity at trial. (Cmplt. Ex. C at 9).

The state court declined to let Plaintiff "do through the back door what you cannot do through the front door," *id.*, and applied the principles of § 116-3 and *O'Connell* in denying the so-called discovery motion. Plaintiff offers no theory to explain why other Illinois courts would not similarly decline to distinguish between substantively identical motions based upon their labels. Although the text of the statute does not expressly state that it is the exclusive vehicle by

13

which prisoners may obtain post-conviction access to DNA evidence,[6] permitting prisoners to

obtain such discovery without meeting the requirements set forth in the statute would defeat the

purpose of enacting the statute in the first place, namely:

> to guard against frivolous requests by limiting the remedy to those cases
> where identity was truly at issue, cases where the use of the new
> technology could test properly preserved genetic material to either confirm
> or decidedly negate other identification evidence that produced the
> conviction. The limitation imposed . . . excludes from the statute's reach
> those defendants whose cases turned upon questions other than the
> question of who committed the acts charged. The limitation is a matter of
> common sense.

*People v. Urioste,* 316 Ill App. 3d 307, 313, 736 N.E.2d 706, 712 (5th Dist. 2000); *see also*

*People v. Moore,* 373 Ill. App. 3d 367, 373, 869 N.E.2d 177, 183 (1st Dist. 2007) (same, citing

*Urioste*). It would defy both common sense and the Legislature's objective to permit access to

DNA evidence by discovery motion in situations where the statute would deny access. *See, e.g.,*

*Porter v. Nussell,* 534 U.S. 516, 530 (2002) (rejecting argument that prisoners could evade

explicit statutory requirements "by the simple expedient of putting a different label on their

pleadings"). And more to the immediate point, Plaintiff offers no rationale allowing those who

label their request a "discovery motion" rather than a "5/116-3 petition" to avoid a "final ruling"

and circumvent the requirements of the statute while seeking identical relief.

---

[6] Illinois courts may have "inherent" authority to permit discovery in post-conviction
proceedings—*see People v. Fitzgerald,* 123 Ill. 2d 175, 183, 526 N.E.2d 131, 135 (1988)—but
Plaintiff has not identified, and the Court has not found, any case permitting discovery of post-
conviction access to forensic evidence by means of a general motion for discovery rather than a
petition under § 116-3. By contrast, Illinois courts have denied post-conviction access to
discovery of forensic evidence where the request does not satisfy the requirements of the statute
without any suggestion that the evidence sought might be available pursuant to a general
discovery request. *See, e.g., People v. Pursley,* 341 Ill. App. 3d 230, 235, 792 N.E.2d 378, 382
(2d Dist. 2003) (denying request for post-conviction ballistics testing because the statute did not
(at that time) provide for such testing).

There is none. Permitting Plaintiff's gambit would only encourage the sort of piecemeal litigation and forum shopping that this case exemplifies, frustrating the goals that undergird both the doctrine of *res judicata* and the procedures governing federal collateral review of state court convictions. "The purpose of *res judicata* [is] to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts." *Nowak v. St. Rita High School,* 197 Ill. 2d 381, 393, 757 N.E.2d 471, 479 (2001). Thus, constitutional challenges to state court convictions should be raised within the context of the state case, whether at trial, on appeal, or during post-conviction proceedings.[7] "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell,* 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)). Recognizing a distinction between § 116-3 petitions and discovery motions would allow petitioners to test the water in state court by submitting non-dispositive "discovery" motions and, if unsuccessful, to seek another bite at the apple by raising constitutional challenges in federal

---

[7] This is not to suggest that the Court agrees with defendant Alvarez that McDowell was required to exhaust his state court remedies in this § 1983 suit. "In general, exhaustion of state remedies 'is not a prerequisite to an action under § 1983.'" *Heck v. Humphrey*, 512 U.S. 477, 480 (1994) (citation omitted). And contrary to defendant's argument, the Supreme Court did not add an exhaustion requirement to § 1983 claims in its opinion in *Skinner*. Rather, the Court only commented there on the difficulties with proving a claim that state law precludes post-conviction access to evidence when a plaintiff does not first test the state procedures. The constitutionality of the state court's denial of post-conviction access to DNA evidence is not *res judicata* in this Court simply because Plaintiff did not pursue that claim in state court; it is *res judicata* because, *having chosen to pursue access to the evidence in a state court proceeding*, McDowell passed up the opportunity to present his constitutional claim in that court.

court.[8]  These considerations reinforce the conclusion that the discovery ruling should have the same "final" and preclusive effect as a ruling denying a § 116-3 petition.

The Court concludes that the state court's denial of Plaintiff's attempt to obtain post-conviction access to DNA evidence satisfies the requirements for application of the doctrine of *res judicata* under Illinois law.  First, there was a final order.  The state court treated Plaintiff's "discovery motion" as a petition under § 116-3 and this Court has no reason to question the validity of that view of state law.  As a ruling on a petition under § 116-3, the state court's ruling constituted a final order on the issue and satisfies the criterion for application of *res judicata* effect.  *People v. Barker,* 403 Ill. App. 3d 515, 522-23 , 932 N.E.2d 1207, 1214 (1st Dist. 2010) (*res judicata* bars successive § 5/116-3 petitions raising same issues).  Second, Plaintiff is now seeking the same relief against the same parties, specifically, the State's Attorney, who was charged with execution of the statute.  Finally, Plaintiff could have argued in state court that denying him access to DNA evidence while he was attempting to prove his actual innocence violated the federal constitution; he did not do so.[9]  Accordingly, Plaintiff's attempt to raise those claims in this Court is barred.

---

[8] Indeed, Plaintiff's logic (if accepted) would permit even more gamesmanship, as nothing would prevent other petitioners from asserting their constitutional claims in state court as a basis for their "discovery" motion, getting a "non-final" adverse ruling, and then trying their luck in the federal courts with the same constitutional claims.

[9] Plaintiff has offered no explanation for his failure to present his constitutional challenges to the statute to the state court in connection with his discovery motion, nor has he argued that he would have presented those challenges had he known that the state court was going to treat his discovery motion as a § 116-3 petition.  In any event, to the extent that any warning by the state court about the collateral consequences of its re-characterization of his petition were due (*see generally People v. Shellstrom,* 216 Ill. 2d 45, 833 N.E.2d 863 (2005)), the remedy would only be to give Plaintiff the opportunity to advance those claims in the state court, not to file them anew in federal court.

### E. Plaintiff's Constitutional Claims

Even if *res judicata* did not bar Plaintiff's constitutional claims, the Court would grant the Defendants' motions to dismiss because the complaint fails to state a valid due process (substantive or procedural) or equal protection claim.[10]

#### 1. Substantive Due Process.

Plaintiff's substantive due process claim cannot get out of the starting gate. In *District Attorney's Office v. Osborne*, 557 U.S. 52 (2009), the Supreme Court flatly rejected the notion that there is a freestanding substantive due process right to access DNA evidence. *Id.* at 72 ("there is no such substantive due process right" to obtain access to DNA evidence). In *Skinner*, the Court reaffirmed that "the Court's decision in *Osborne* rejected the extension of substantive due process to this area." 131 S. Ct. at 1293; *id.* at 1299 ("*Osborne* has rejected substantive due process as a basis for [DNA testing] claims").

#### 2. Procedural Due Process.

As the Court also noted in *Skinner*, *Osborne* left only slightly more room for advancement of a procedural due process claim. 131 S. Ct. at 1293. To assert a procedural due process claim, the Plaintiff must have a cognizable liberty or property interest under state or federal law in obtaining evidence for DNA testing and demonstrate that he was deprived of that right without due process of law. *Osborne*, 557 U.S. at 69. In *Osborne*, the Supreme Court held

---

[10] Neither the Seventh Circuit nor the Illinois Supreme Court has addressed the constitutionality of the restrictions on post-conviction DNA testing imposed by § 116-3. *See Savory v. Lyons,* 469 F.3d 667, 674-75 (7th Cir. 2006) (reserving the issue). Another district judge in this district has previously rejected a claim that those restrictions are unconstitutional, *Gartman v. Pierce,* No. 05 C 3123, 2012 WL 1932118, at *17 (N.D. Ill. May 29, 2012), and the Illinois appellate court has also rejected facial substantive due process and equal protection challenges to § 116-3, *People v. Moore,* 373 Ill. App. 3d 367, 373, 869 N.E.2d 177, 183 (1st Dist. 2007).

that, where the state allowed convicted persons to establish their innocence, the plaintiff "ha[d] a liberty interest in demonstrating his innocence with new evidence under state law."[11] *Osborne*, 557 U.S. at 68. Illinois allows convicted persons to demonstrate that they are actually innocent in a post-conviction petition. *See Washington*, 665 N.E.2d at 1334-37 (holding "as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process"). As *Osborne* acknowledged, such a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." 557 U.S. at 68. (citation and internal quotation marks omitted). However, once created, the state-law right need not be absolute. "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 569. The question thus becomes whether, by limiting access to post-conviction DNA testing to prisoners who did not plead guilty, Illinois "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Id.* (internal quotations marks omitted).

_____

[11] Any protectable liberty interest Plaintiff has arises under state law because the Supreme Court has not recognized a federal constitutional due process right to pursue a claim of actual innocence. *See generally Herrera v. Collins*, 506 U.S. 390, 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). And if there were such a federal constitutional right, Plaintiff could not avail himself of it in a proceeding under § 1983 because it would implicate the validity of his underlying conviction and would therefore have to be brought in a habeas proceeding. *See Osborne*, 557 U.S. at 72 ("Osborne does not dispute that a federal actual innocence claim (as opposed to a DNA access claim) would be brought in habeas.").

The State's statute allowing post-conviction DNA testing only for certain defendants—those who contested identity at trial—does not render the procedures for establishing actual innocence so inadequate as to vitiate the right. That there is a due process right in Illinois to pursue an actual innocence claim "only means, of course, that there is footing in the Illinois Constitution for asserting freestanding innocence claims based upon newly discovered evidence under the Post-Conviction Hearing Act. Procedurally, such claims should be resolved as any other brought under the Act. Substantively, relief has been held to require that the supporting evidence be new, material, noncumulative and, most importantly, "of such conclusive character" as would "probably change the result on retrial." *People v. Silagy,* 116 Ill.2d 357, 368, 507 N.E.2d 830, 834 (1987), quoting *People v. Molstad,* 101 Ill.2d 128, 134, 461 N.E.2d 398, 401-02 (1984). There is no general right under Illinois law to access non-material evidence in pursuit of an actual innocence claim and, accordingly, Plaintiff has not been deprived of any "liberty interest" in such a right.

The requirement under § 116-3 that identity have been contested at trial is of the same nature as the materiality requirement. And consistent with the materiality limitation on the Illinois due process right to pursue an actual innocence claim, § 116-3 imposes a materiality element in its requirements for access to post-conviction DNA testing. *Savory,* 197 Ill. 2d at 213-14, 756 N.E.2d at 811. If identity was not contested, then DNA evidence to establish identity cannot be material. *Urioste,* 316 Ill. App. 3d at 313, 736 N.E.2d at 712 ("Unless the question of identity was truly in dispute during the trial, new forensic testing would be pointless.").

The Supreme Court has upheld such materiality requirements. In *Osborne,* the Court expressly noted that materiality requirements are found in DNA procedures under the federal

19

DNA statute and the laws of a number of other states and "are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" 557 U.S. at 70. Notably, the federal DNA access statute cited approvingly in *Osborne*, like the Illinois statute, requires identity to have been at issue at trial. 18 U.S.C. § 3600(a)(7). *See also, e.g., Thompson v. Rundle,* 393 Fed. Appx. 675, 679-80 (11th Cir. 2010) (rejecting procedural due process challenge to Florida DNA statute based in part on comparability with the federal DNA statute endorsed in *Osborne*).

Plaintiff contends that the Illinois Supreme Court's ruling in *O'Connell* altogether forecloses access to DNA evidence for prisoners who pleaded guilty and effectively denies him the ability to pursue a claim of actual innocence. But there is nothing fundamentally unfair about denying convicted prisoners the opportunity to conduct immaterial—*i.e.,* "pointless"—tests. There is, moreover, little basis to conclude that depriving someone who, under oath, pleads guilty to a crime of the right to pursue an actual innocence claim violates fundamental notions of fairness. By definition, defendants who plead guilty waive all sorts of rights that are critical to their ability to establish their actual innocence, yet enforcement of a guilty plea does not violate due process on that basis. *See, e.g., Boykin v. Alabama,* 395 U.S. 238, 242 (1969) (guilty plea waives, among other rights, privilege against self-incrimination, right to jury trial, and right to confront witnesses); *Moore,* 373 Ill. App. 3d at 373-74, 869 N.E.2d at 183-84 (rejecting claim that plea was not voluntary because defendant not advised that collateral consequence of plea would be waiver of access to DNA testing); *People v. Barnslater,* 373 Ill. App. 3d 512, 527, 869 N.E.2d 293, 306 (1st Dist. 2007) (denial of a "postconviction claim of actual innocence cannot be deemed to deprive [defendant] of his due process rights in the face of the fact that the

defendant previously confessed to the commission of the crime in his plea."). A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). These principles are embodied by the limitations set forth in the Illinois statute, which permits "new forensic tests to occur only in those cases where such testing could discover new evidence at sharp odds with a previously rendered guilty verdict *based upon criminal acts that the defendant denied having engaged in*." *Urioste*, 316 Ill. App. 3d at 313, 736 N.E.2d at 712 (emphasis added).

Plaintiff does argue that his guilty plea was involuntary, but nothing in § 116-3 or *O'Connell* precluded him from attacking the validity of his guilty plea on that basis. To the contrary, Illinois law is clear that Plaintiff's claim that his plea was coerced presents (if proven) a viable basis to vacate the plea and, as a result, remove the principal impediment to Plaintiff's access to the DNA evidence he seeks. *See, e.g., People v. Williams,* 188 Ill. 2d 365, 370 721 N.E.2d 539, 543 (1999) ("If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and, therefore, is void."); *People v. Anderson,* 402 Ill. App. 3d 1017, 1031-32, 931 N.E.2d 715, 728 (1st Dist. 2010) (actual innocence claim predicated on police coercion permits inquiry into voluntariness of guilty pleas); *Barnslater,* 373 Ill. App. 3d at 527, 869 N.E.2d at 306 (coercion supplies "the necessary constitutional deprivation" to support post-conviction actual innocence claim in context of a guilty plea). The record before this Court does not reveal how Plaintiff previously challenged the voluntariness of his guilty plea, or whether such a challenge remains open to him, but it suffices for purposes of evaluating his due process claim to note that Illinois law does provide means to vacate an involuntary plea and

thereby restore to a prisoner his right, under § 116-3, to seek access to DNA evidence. Accordingly, the premise of Plaintiff's constitutional challenge to Illinois' procedures for obtaining access to DNA evidence—that it entirely forecloses access to such evidence to those who have pleaded guilty—is simply incorrect.

Accordingly, the Court concludes that the Illinois statute limiting new forensic testing to defendants who contested identity at trial does not render the post-conviction procedures fundamentally inadequate to vindicate the state-created right to bring a claim of actual innocence. This means that Plaintiff cannot establish that state law provides him with a protectable liberty interest for purposes of his due process claim. Absent such an interest, the procedural due process challenge fails.

### 3. Equal Protection

Plaintiff also asserts that because a defendant who pleaded guilty is not afforded the same opportunity to obtain new forensic testing in support of an actual-innocence claim as prisoners convicted after a trial, § 116-3 violates equal protection. "The Fourteenth Amendment's Equal Protection Clause requires that all persons similarly situated ... be treated alike. But Equal Protection claims are subject to different degrees of scrutiny depending on the individual rights or the class of persons at issue." *Council 31 of AFSCME v. Quinn,* 680 F.3d 875, 886 (7th Cir. 2012) (internal quotation marks and citations omitted). Unless a statute targets a suspect class (*e.g.*, race, alienage, or national origin) or impinges on fundamental constitutional rights, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1072 (7th Cir. 2005).

Plaintiff argues that the statute discriminates against defendants convicted through a guilty plea. This is not a suspect class of persons. Under equal protection law, heightened scrutiny has been afforded only to classes based on highly personal and typically immutable characteristics such as race, ancestry and religion that have historically been "subjected to . . . a history of purposeful unequal treatment." *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28 (1973). *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312-13 & n.4 (1976) (citing examples). "Prisoners," in general, "are not a suspect class; conviction of crime justifies the imposition of many burdens." *Johnson v. Daley,* 339 F.3d 582, 585-86 (7th Cir. 2003).[12] And indeed, classifications among prisoners that are rationally related to legitimate state objectives do not offend the equal protection clause, even when they touch on areas that might otherwise merit less deferential review. *See, e.g., Maddox v. Love,* 655 F.3d 709, 719 (7th Cir. 2011) ("prison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective, such as security and economic concerns"). The Court perceives no basis, then, to conclude that the equal protection clause requires heightened constitutional scrutiny of state actions uniquely affecting convicted felons who waived the right to trial by pleading guilty.

The collection of "fundamental rights" deemed to merit strict scrutiny when implicated by government action has similarly been limited to core areas of personal freedom. *Murgia,* at 312 & n.3 (citing examples). These rights do not, however, extend to the context of post-conviction proceedings, *see, e.g., Pennsylvania v. Finley,* 481 U.S. 551, (1987) (neither equal

---

[12] *See also, e.g., Dodson v. Wilkinson,* 304 Fed. Appx. 434, 441 n. 1 (6th Cir. 2008); *Fareese v. Scherer,* 342 F.3d 1223, 1229 n.7 (11th Cir. 2003); *Rodriguez v. Cook,* 169 F.3d 1176, 1179 (9th Cir. 1998); *Murray v. Dosal,* 150 F.3d 814, 818 (8th Cir. 1998); *Tucker v. Branker,* 142 F.3d 1294, 1300 (D.C. Cir. 1998); *Trerice v. Summons,* 755 F.2d 1081, 1085 (4th Cir. 1985).

protection nor due process clause provides right to counsel in post-conviction proceedings), and the Court is aware of no authority holding, or supporting, the proposition that post-conviction access to DNA testing is a fundamental right. Indeed, as noted above, the Supreme Court has never held even that there is a due process right to pursue a claim of innocence, *Herrera,* 506 U.S. at 400, so the claim that there is a fundamental right to obtain and test DNA evidence in the pursuit of such an actual innocence claim is a non-sequitur.

In the absence of a suspect class or a fundamental right, Plaintiff's equal protection claim can stand only if the state had no reasonably conceivable basis for barring prisoners who plead guilty from post-conviction access to DNA evidence. *See Council 31,* 680 F.3d at 886 ("The proper level of scrutiny in this circumstance is the rational relationship test, for our case does not involve a fundamental right, and there is no suspect class. Under that standard, the applicable government regulation will be upheld if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose."). To survive the motions to dismiss, Plaintiff must plausibly allege that there is no reasonably conceivable justification for distinguishing between criminal defendants who pleaded guilty and those who contested the issue of identity at trial. *See id.* at 887. This is not possible. As the Illinois Appellate Court has already succinctly observed, barring prisoners who did not contest their identity in a trial from pursuing evidence that is relevant only to the issue of identity is hardly irrational; rather, "the limitation is a matter of common sense." *Urioste,* 316 Ill. App. 3d at 313, 736 N.E.2d at 712. The legislature "sought to guard against frivolous requests by limiting the remedy to those cases where identity was truly at issue, cases where the use of the new technology could test properly preserved genetic material to either confirm or decidedly negate other identification evidence

that produced the conviction." *Id.* Amidst these reasons, Plaintiff cannot, and did not, plausibly plead that the legislature had no possible rational basis for its classification.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss [97, 105] are granted and the Complaint is dismissed with prejudice.

ENTER:

John J. Tharp, Jr.
United States District Court Judge

DATE: 8/15/12

25